JAMES E. TREVATHAN ET AL *v.* RINGGOLD-NOLAND FOUNDATION ET AL

5-4020                                                410 S. W. 2d 132

Opinion delivered January 9, 1967

*Erwin & Bengel,* for appellants.

*Murphy & Arnold,* for appellees.

J. FRED JONES, Justice. This suit involves the disposition of the assets of a charitable corporation under the *cy pres* doctrine. The directors of the corporation filed petition in Chancery seeking authority to sell the corporate property and to apply the proceeds to the erection

of an addition to a public library not previously contemplated. Some of the original donors and incorporators filed a response opposing the sale and proposed use of the funds. The trial court, in applying the *cy pres* doctrine, permitted the sale and authorized the use of the funds in the construction of an addition to the library, and respondents have appealed.

In 1944 one hundred thirty individuals and business firms in Batesville, Arkansas and vicinity, raised $3,-834.00 in individual cash donations ranging in amounts from fifty cents to $100.00, and on March 9, 1944, the Ringgold-Noland homestead in the city of Batesville was purchased for $3,000.00 and title was taken in the name of one of the donors, as trustee.

In June 1945, the Ringgold-Noland Foundation (hereinafter referred to as Foundation) was organized as a charitable corporate entity, with three of the named appellants and four of the appellee directors among the original incorporators of the foundation.

Since the intent and purposes of the original 130 donors are important to this litigation and since their intent and purpose in making their donations are reflected only in the constitution of the foundation subsequently incorporated by fourteen of the original donors, the entire constitution of the Foundation is set out here as follows:

"We, whose names are annexed, desiring to form an association, for the purpose of reconstructing and preserving one of the ancient landmarks of this city, and the state to provide a place for preserving any and all ancient and historical data and mementos that will show our appreciation for the sacrifices and devotion of our forefathers to their country, and to the coming generation the spirit and sentiment of their fathers and mothers, and their reverence for their forefathers, and to provide rest rooms, probably a library, and such other items and things as will serve the town, county and state,

do pledge ourselves to be governed by the following constitution:

1. The name of said center shall be "Ringgold-Noland Foundation."

2. It shall be governed and controlled by a Board of Directors, consisting of five, to be selected at a mass meeting of the signers and contributors to said property.

3. The Board of Directors shall select one of their number as president, one as vice president and one as secretary and treasurer.

4. The support and maintenance of said Foundation shall be provided for by this Board of Directors."

After the property was purchased and the Foundation was formed, apparently no further action was taken by the donors or the incorporators of the Foundation during the next twelve years except that a roof was put on the building between 1945 and 1957 and a fence was erected around the property by the Lions Club. Some interest was shown in the restoration project by the Lions Club and the Independence County Historical Society, but no positive effort to restore the building was made.

In April 1957, the Batesville Chamber of Commerce indicated an interest in purchasing some of the property for an industrial site, and some of the original incorporators of the Foundation called a meeting of the original donors for the purpose of electing a Board of Directors and for the purpose of discussing the sale of some of the property to the Chamber of Commerce for an industrial site.

The first meeting of the Board of Directors was held on April 30, 1957, and the Chairman and Secretary

were authorized and ordered to offer a part of the property to the Chamber of Commerce for $6,000.00, but at a meeting held on May 22, 1957, the Board of Directors agreed to take no further action relative to the sale "with the view of possible interest in a restoration project."

On May 23, 1957, the title to the property was transferred by Mrs. C. G. Hinkle, Trustee, to the Foundation and $494.41 was turned over to the Foundation.

Some interest in the restoration project was revived from time to time between 1945 and 1965 during which time the market value of the property continued to increase, but interest in the restoration project did not. In the meantime, the walls of the building has fallen down and most of the brick had been used in the erection of a Chamber of Commerce building. By 1965 nothing was left of the Ringgold-Noland home except the foundation of the original structure.

On December 3, 1965, the directors of the Foundation filed their petition in the Independence County Chancery Court praying authority to sell the trust property under terms and conditions set by the Court, and for authority to apply the proceeds to the building of an addition to the Independence County library at its present location on Broad Street in Batesville, the addition to be used for purposes consistent with, and in conformity to, the constitution of the Foundation.

The trial court set the petition for hearing on January 11, 1965, and directed that notice of the hearing be sent to all known donors and that notice be published in the Batesville Guard for four consecutive weeks. Notice was published and sent as directed by the Court, and response was timely filed by appellants on behalf of themselves and other donors, praying that the petition be denied and that the Board of Directors of the Foundation be instructed to carry out the original intent and purposes of the original donors and the Foun-

dation itself, or that the directors be required to resign and permit another Board to be elected. Respondents prayed that in the event of sale, the proceeds be distributed among the original donors, their heirs, successors and assigns.

While this matter was pending in the trial court, the Batesville Chamber of Commerce proposed to build a youth center with the proceeds from the sale of the property, and the Independence County Library filed a "Statement of Position and Request of Independence Library Board" proposing to use the estimated $15,-000.00 proceeds from the sale of the property, to be matched by a like amount of Federal funds, in building a new addition to the Independence County library at its present location, said addition to be named "The Ringgold-Noland Memorial Room" and to be used primarily to emphasize the early local and state history, and to house valuable historical documents.

On January 14, 1966, the trial court entered its decree holding that restoration of the Ringgold-Noland building would be wholly impractical; that the contributions of the original donors were gifts to the Foundation and a refund would be next to impossible. Holding that the cy pres doctrine applied to the facts in this case, the trial court entered its decree for the sale of the property and directed that the funds be turned over to the Independence County Library Board.

The intervenors on appeal to this Court have set out nine points on which they rely for reversal. Points (1), (2), (3), (4), (5), and (6) have to do with evidence pertaining to proposed uses of the property if it is not restored to its original state, and we find no merit in assignment of error on points (7) and (8).

We agree with the trial court that the *cy pres* doctrine is applicable in this case, and we hold that the evidence as to the possible use of the funds and property that would most nearly carry out the purpose and in-

tentions of the donors was not only admissible but was necessary to an equitable and proper disposition of the problem in this case.

Appellants say that the controlling question under the *cy pres* doctrine is the intention of the donors and its possibility of performance and they argue that from pictures of the Ringgold-Noland home still in existence, it is still possible to reconstruct the building on its old foundation.

In the case of *Slade* v. *Gammill*, 226 Ark. 244, 289 S. W. 2d 176, in affirming a decree of the trial court under the *cy pres* doctrine, this court quoted with approval from volume 2, A, Section 431 Bogert, on The Law of Trusts and Trustees as follows: * * * "the *cy pres* doctrine is '. . . the principle that equity will, when a charity originally or later becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. It is the theory that equity has the power to mould the charitable trust to meet emergencies.'" Appellees correctly interpret our holdings in the case of *McCarroll* v. *Grand Lodge I.O.O.F.*, 154 Ark. 376, 243 S. W. and *Burel* v. *Grand Lodge I.O.O.F.*, 163 Ark. 131, 259 S. W. 369.

We view the situation here as we did in the case of the *State National Bank of Texarkana* v. *Bann*, 202 Ark. 850, 153 S. W. 2d 158.

The case involved a charitable trust provided in a will for the establishment and operation of a Charity Hospital. The hospital was purchased and was operated for a time under lease. When the lease expired, the trustees were permitted by the trial court to sell the property and donate the proceeds to the Sisters of Charity. In affirming the trial court in that case, we said:

"We cannot cause this trust to be executed in the precise manner contemplated by the testator, but we can apply the trust fund to another charity as nearly as possible like that mentioned in the will. The Trustees are men of high standing and business ability. They say they cannot longer operate the present hospital with the funds in hand." * * * "Appellees own no property except that here involved, the outmoded hospital, and about $1,500.00 cash in bank. They have no income except the $1,800.00 per year rent from appellant. It is not difficult to see the impracticability, if not impossibility, of continuing to operate a charity hospital."

Appellants in the case at bar estimate that the property could be restored for between $20,000.00 and $25,-000.00. It must be remembered, however, that the trustees of the Foundation are not only charged in their constitution with reconstructing and preserving one of the ancient landmarks of the City of Batesville and the State, but are likewise charged with the responsibility of providing a place for preserving ancient and historical, data and mementos, and they are specifically charged with providing the support and maintenance of the Foundation.

We find that the decree of the trial court is not against the preponderence of the evidence in this case and the decree is therefore affirmed.

Affirmed.

BROWN, J., dissents.