Paul E. Danielson, Justice, dissenting. I respectfully dissent.' The majority’s analysis in this case is fatally flawed. The majority begins its analysis by addressing the issue of whether the churches had a vested interest in the farmland upon Mr. Carpenter’s death. However, the initial inquiry should be to determine the- intent of the settlor. Carpenter | tflclearly intended to .create a charitable trust to which the circuit court properly applied the doctrine of cy pres. Accordingly, I would affirm the circuit court’s rulings. Carpenter’s Will gives four family members each a one-fourth interest in the net farm rents during his or her lifetime with the rents to be paid to Carpenter’s estate upon the death of the life béneficiary. The Will further provides as follows: All of the rest, residue and remainder of my estate I give ... in equal shares ... to the First Presbyterian Church, Osceola, Arkansas, and the First Baptist Church, Osceola, Arkansas.... I further direct my trustee to sell all real estate in their discretion as soon as the law permit[s], taking into consideration the existence of the life estates herein-before created, and - distribution of the proceeds therefrom in accordance with this bequest. The Will- clearly created a testamentary trust, a portion of which was a charitable trust for the benefit- of - the two local churches. Arkansas Code Annotated section 28-73-103(4) (Repl. 2012) defines a charitable trust as “a-trust, or portion of a trust, created for a charitable purpose described in § 28-73-405(a).” . Section 28-73-405(a) expressly identifies “the advancement of education or religion” as. a permissible purpose for a charitable trust. The majority correctly quotes Restatement (Second) of Trusts § 348, which defines a charitable trust as a “fiduciary relationship with respect to property arising as a result of a manifestation of ari intention to create it, and. subjecting the person by whom the property is held to equitable duties to deal with property for a charitable purpose.”" The majority then goes on to say that in this case, “a plain reading of the instrument reveals that the only identifiable purpose of the testamentary trust was to administer the life estates, which are not charities.” This flawed reasoning completely ignores the intention of the settlor, which was to benefit the community through the advancement of religion. In Covenant argues that Carpenter’s Will did not create a charitable trust, despite the fact that Carpenter named two charitable institutions, First Presbyterian and First Baptist. Specifically, Covenant contends that the Will did not create a charitable trust because Carpenter did not explicitly state the purposes for which the churches should use the trust income. Essentially, Covenant is arguing that Carpenter must have included a statement that attached strings to the devise, thereby controlling the way the churches could use the funds. The plain language of section 28-73-405 clearly does not require such a statement. Section 28-73-405(b) provides in part that “[i]f the terms of a charitable trust do not indicate a particular charitable purpose or beneficiary, the court may select one (1) or more charitable purposes or beneficiaries.” There is no requirement that the Will set out the charitable purpose itself, as long as it is clear that the settlor intended to provide for a charitable purpose. Furthermore, designating the remainder of the estate to two churches is permissible under section 28-73-405(a) as an advancement of religion. Carpenter specifically selected two churches, First Baptist and First Presbyterian, as beneficiaries. This selection clearly indicates an intent to provide for a charitable purpose. In addition, I disagree with the majority’s opinion that the churches had a vested interest in the farmland upon Mr. Carpenter’s death. According to the Will, the property was to be held in trust during the life of the beneficiaries and then sold with the proceeds divided equally between the two churches. The Will did not instruct the trustee to deed the property to the churches upon the death of the life beneficiaries. Neither church possessed ownership interest in the property itself, but only in the proceeds after the property 112was managed and then sold by the trustee. Accordingly, I would affirm the circuit court’s ruling that the churches did not have a vested interest in the farm property. Because the trust is a charitable trust, I would address the issue of whether the circuit court correctly applied the cy pres doctrine in transferring First Presbyterian’s interest in the farm property to First Baptist. “The cy pres doctrine, as applied in the United States, is the doctrine of approximation. In its last analysis it is found to be a simple rule of judicial construction designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor.” State ex rel. Att’y Gen. v. Van Buren Sch. Dist. No. 42, 191 Ark. 1096, 1102, 89 S.W.2d 605, 607-08 (1936). The equitable doctrine of cy pres is the principle that equity will, when a charity originally or later becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. It is the theory that equity has the power to mould the charitable trust to meet emergencies. Trevathan v. Ringgold-Noland Found., Inc., 241 Ark. 758, 763, 410 S.W.2d 132, 135 (1967) (quoting Slade v. Gammill, 226 Ark. 244, 252, 289 S.W.2d 176, 181 (1956)). Arkansas has codified the cy pres doctrine at Arkansas Code Annotated section 28-73-413: (a) Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful: (1) the trust does not fail, in whole or in part; (2) the trust property does not revert to the settlor or the settlor’s successors in interest; and (3) a court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor’s charitable purposes. | m(b) A provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary prevails over the power of a court under subsection (a) to apply cy pres to modify or terminate the trust only if, when the provision takes effect: (1) the trust property is to revert to the settlor and the settlor is still living; or (2) less than thirty (30) years have elapsed since the date of the trust’s creation. Ark.Code Ann. § 28-73-413. First Presbyterian Church dissolved in 2004. All assets and property that had not been previously sold or distributed were transferred to Covenant Presbytery, a division of the Presbyterian Church in America. The circuit court found that because the First Presbyterian Church of Osceola no longer exists, it was appropriate to apply the cy pres doctrine to name a new beneficiary of the interest devised to First Presbyterian. Applying the cy pres doctrine, the circuit court interpreted the terms of the trust and the Will to mean that Carpenter’s intention was to benefit two churches in Osceola, Arkansas, because that is where Carpenter lived. The court found that “the intention of Stanley Carpenter was to benefit churches in his hometown of Osceola, rather than to benefit Covenant Presbytery, which did not exist at the time of his death and no longer administers a church in Osceola.” Because First Presbyterian was no longer available as a charitable purpose, the court found that the portion of the trust that was to benefit First Presbyterian should be transferred to First Baptist. Covenant argues that the circuit court’s conclusion was clearly erroneous because the Will indicates that Carpenter sought to benefit both the Presbyterian and Baptist faiths and that there was no indication that he intended that his gifts must remain local to Osceola. We review the circuit court’s construction and interpretation of trusts de novo. See In re Matter of Hamilton Living If., 2015 Ark. 367, 471 S.W.3d 203. We will not reverse the circuit court’s factual findings unless they are clearly erroneous. Id. The Will indicates an intent to benefit two local churches, and it is clear that Carpenter wanted to benefit First Baptist. Whether Carpenter would have wanted First Presbyterian’s interest to transfer to First Baptist, or whether he would have chosen a different beneficiary is unclear. However, the question here is whether the circuit court’s findings in applying the cy pres doctrine were clearly erroneous. See, e.g., Lowery v. Jones, 272 Ark. 55, 611 S.W.2d 759 (1981). Based on the evidence presented, I cannot say that the findings were clearly erroneous. Therefore, I would affirm the circuit court’s application of the cy pres doctrine. Goodson, J., joins in this dissent.