SLIP OPINION

Cite as 2015 Ark. 367

# SUPREME COURT OF ARKANSAS

No. CV-14-986

|  |  |
|---|---|
| IN THE MATTER OF THE HAMILTON LIVING TRUST<br><br>BANK OF THE OZARKS<br>APPELLANT<br><br>V.<br><br>SUSAN COSSEY<br>APPELLEE | **Opinion Delivered** October 8, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60PR-13-43]<br><br>HONORABLE MORGAN E. WELCH, JUDGE<br><br>AFFIRMED; COURT OF APPEALS OPINION VACATED. |

### RHONDA K. WOOD, Associate Justice

The question in this case is whether a designated trustee properly declined the trusteeship or accepted by exercising powers of the trustee. Bank of the Ozarks was designated as the successor trustee of the Hamilton Family Living Trust. The Bank sent correspondence to a trust beneficiary rejecting the trusteeship, but the Bank still reimbursed the beneficiary for certain expenses. Another trust beneficiary brought a petition for an accounting against the Bank. The circuit court granted the petition, and the Bank appealed, arguing that it had rejected the trusteeship and was not required to perform an accounting. We affirm the circuit court's order because the Bank's actions exceeded the mere preservation of trust property and were instead consistent with exercising powers as trustee.

## I. *Relevant Facts*

Frank Hamilton and Margaret Hamilton created the Hamilton Living Trust and were the primary trustees. The trust's terms provided that upon the death of one of the trustees,

1

the surviving trustee would serve as co-trustee with the Bank of the Ozarks Trust Department. The trust further designated the Bank to serve as successor trustee once the surviving trustee died. Should the Bank be unwilling to act as trustee, the trust provided that a majority of the beneficiaries may select an FDIC-insured corporate trustee to act as trustee. Frank and Margaret also executed pour-over wills, directing all of their remaining probate property to be placed into the trust. The trust's primary beneficiaries were the Hamiltons' two children, Larry Hamilton and Susan Cossey. The Bank had possession of some of the trust's assets—mainly cash and securities—through a custody agreement with the trustees.

Frank died in November 2008, and Margaret died in November 2009. In 2013, Susan Cossey filed a petition to demand the Bank to provide an accounting of the trust. The petition alleged that the Bank had served as a co-trustee of the trust after Frank died; it further alleged that the Bank had served as sole successor trustee after Margaret died. The Bank responded and denied that it had ever served as trustee of the trust and had no obligation to perform an accounting. The circuit court held a hearing on the petition in August 2013.

The only witness at the hearing was Rex Kyle, president of the Trust and Wealth Management Division of Bank of the Ozarks. During Kyle's testimony, six letters from Kyle to Larry Hamilton were introduced as exhibits. With dates ranging from December 2009 to January 2011, all six letters contained the same essential message: the Bank was declining to serve as successor trustee, and Hamilton should find someone else to serve. Even though Kyle's letters to Hamilton referred to Hamilton as the personal representative of his mother's

estate, no estate had been opened and there was no court order naming Hamilton as the personal representative.

Kyle also testified about actions the Bank took in regard to the trust's bank account. After Margaret's death, the Bank reimbursed Hamilton for expenses he had incurred in the administration of his mother's estate. These included funeral expenses, auto expenses, and utility payments for a home. The Bank also liquidated some securities at Hamilton's direction. Kyle maintained that the reimbursements were made in a ministerial fashion in order to preserve the trust's assets. Despite this claim, Kyle admitted that he did not know whether Hamilton had actually been appointed personal representative by a probate court or whether the car or home were trust assets.

The court granted Cossey's petition for an accounting. The court found that the Bank had rejected the trusteeship by sending letters to Hamilton; however, the court found that once the Bank reimbursed Hamilton for expenses he had incurred managing his mother's estate, the Bank accepted the trusteeship by performing duties as a trustee. Accordingly, the court ordered the Bank to perform an accounting. The court also awarded Cossey attorney's fees. The Bank appealed from both orders.

The case proceeded to the court of appeals. *See Bank of the Ozarks v. Cossey*, 2014 Ark. App. 581, 446 S.W.3d 214. That court dismissed the appeal, holding that the circuit court's order was not final.[1] The Bank filed a petition for review with this court, which we

---

[1] The circuit court's order was appealable as a final judgment or decree. *See* Ark. R. App. P.–Civ. 2(a)(1) (2014). For a judgment to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy; thus, the order must put the trial court's directive into execution, ending the litigation, or a separable branch of it. *Smith v. Smith*, 337 Ark. 583, 990 S.W.2d 550 (1999).

SLIP OPINION

granted. We now review this case as if it had been filed here initially. *See In re Guardianship of W.L.*, 2015 Ark. 289, \_\_ S.W.3d \_\_.

II.      *Accepting or Declining the Trusteeship*

We review the circuit court's construction and interpretation of trusts de novo. *See In re Estate of Thompson*, 2014 Ark. 237, 434 S.W.3d 877. We will not reverse the circuit court's factual findings unless they are clearly erroneous. *Id.* We also review issues of statutory interpretation de novo. *Bakalekos v. Furlow*, 2011 Ark. 505, 410 S.W.3d 564.

Essentially, the Bank argues that it explicitly rejected the trusteeship and that any reimbursements it made to Hamilton were authorized by a safe-harbor provision of the Arkansas Trust Code, which allows a person who rejects a trusteeship to take actions in order to preserve trust property. The circuit court rejected this argument and held that the Bank's actions resembled those of a trustee or de facto trustee. We agree with the circuit court.

One particular statutory provision from the Arkansas Trust Code is central to this case. We quote from that section, titled "Accepting or declining trusteeship," in its entirety:

    (a) Except as otherwise provided in subsection (c), a person designated as trustee accepts the trusteeship:

    (1) by substantially complying with a method of acceptance provided in the terms of the trust; or

    (2) if the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by accepting delivery of the trust property,

Such is the case here. A single petitioner (Cossey) brought a single claim (accounting) against a single respondent (the Bank). After a hearing, the circuit court granted the petition and ordered the Bank to perform an accounting. Thus, the parties were dismissed from the court, the action was discharged, and the rights to the subject matter were concluded.

4

exercising powers or performing duties as trustee, or otherwise indicating acceptance of the trusteeship.

(b) A person designated as trustee who has not yet accepted the trusteeship may reject the trusteeship. A designated trustee who does not accept the trusteeship within a reasonable time after knowing of the designation is deemed to have rejected the trusteeship.

(c) A person designated as trustee, without accepting the trusteeship, may:

(1) act to preserve the trust property if, within a reasonable time after acting, the person sends a rejection of the trusteeship to the settlor or, if the settlor is dead or lacks capacity, to a qualified beneficiary; and

(2) inspect or investigate trust property to determine potential liability under environmental or other law or for any other purpose.

Ark. Code Ann. § 28-73-701 (Repl. 2013). To summarize this section generally, a person designated as trustee who has rejected the trusteeship may still "act to preserve trust property" if he sends a rejection of the trusteeship to a qualified beneficiary after each action taken.[2] Yet a person or entity designated as trustee accepts the trusteeship by "exercising powers or performing duties as trustee." Here, the Bank asserts that it rejected the trusteeship, acted only within the safe-harbor parameters of subsection (c), and never exercised powers as trustee.

We agree with the Bank's contention that it rejected the trusteeship when it sent Larry Hamilton six letters over the course of a year declining to serve as trustee. But we disagree that the Bank remained within subsection (c)'s safe harbor. Based on the evidence

---

[2] The record is silent as to whether the Bank's correspondence was sent after each action in order to fully comply with the safe-harbor provision; however, Cossey has not raised this issue.

SLIP OPINION

presented at the hearing, we conclude the circuit court was correct in holding that the Bank had accepted the trusteeship by "exercising powers or performing duties as trustee."

First, there was no evidence presented at the hearing that the property the Bank meant to preserve was actually trust property. The Bank reimbursed Hamilton for utility and auto expenses without any evidence that the home or vehicle was owned by the trust. Rex Kyle testified that he did not know the full extent of the trust's assets. As far as we can tell from Kyle's testimony, the only assets actually in the trust upon Margaret's death were stocks and cash. Kyle testified that he reimbursed Hamilton for expenses under the assumption that Hamilton was personal representative of his mother's estate; however, at the time the reimbursements were made, no decedent's estate had been opened and no court had appointed Hamilton as personal representative. So it is improbable that title to these assets, which was most likely in the estate's hands, had become assets of the trust per Margaret's pour-over will. Second, the Bank took the further steps of reimbursing Hamilton for funeral expenses as well as liquidating securities at his direction. The Bank's actions went beyond mere preservation of trust assets and do not fall within the safe-harbor provision of subsection (c).

The Bank's actions instead fall under a different statutory provision: the Bank accepted the trusteeship by "exercising powers or performing duties as trustee." Ark. Code Ann. § 28-73-701(a)(2). The trust document allowed the trustee to disburse funds to pay for the estate's debts and expenses. One provision authorized the trustee to distribute funds to the estate's personal representative; another provision called for the successor trustee to pay the funeral expenses of the surviving grantor (here, Margaret). So when the Bank


reimbursed Hamilton for automobile expenses, house utilities, and funeral expenses associated with Margaret's death, the Bank accepted the trusteeship by exercising the powers the trust document delegated to the trustee. In addition, the Bank liquidated assets by selling securities, another clear function of a trustee.

We therefore affirm the circuit court's order directing the Bank to perform an accounting. The Bank's reliance on subsection (c)'s safe harbor is unavailing. The Bank never showed that the property it meant to preserve was owned by the trust; instead, its activities were consistent with accepting the trusteeship.

### III.    *Attorney's Fees*

The Bank has also appealed from the circuit court's order awarding Cossey $9441.20 in attorney's fees. The Bank argues that the attorney's fee award was contrary to the statute and was unreasonable. We reject both arguments and affirm the award.

Attorney's fees are generally disallowed except when expressly provided for by statute. *Hanners v. Giant Oil Co. of Ark.*, 373 Ark. 418, 284 S.W.3d 468 (2008). The statute here allows the court to award reasonable attorney's fees "[i]n a judicial proceeding involving the administration of a trust . . . as justice and equity may require." Ark. Code Ann. § 28-73-1004. The Bank argues that determining whether it was the trustee did not involve the "administration of a trust." But whether the Bank was trustee was only one aspect of the proceedings below. The fundamental issue was whether the Bank should be required to perform an accounting, an issue that is manifestly an aspect of trust administration. *See* Restatement (Third) of Trusts §§ 109–11 (including the "Accounting for principal and income" chapter under the Trust Administration section heading).

Next, the Bank argues that the award was contrary to justice and equity and, in any event, was unreasonable. We review the circuit court's decision to award attorney's fees and the amount of the award for an abuse of discretion. *Harrill & Sutter, PLLC v. Kosin*, 2011 Ark. 51, 378 S.W.3d 135. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the court act improvidently, thoughtlessly, or without due consideration. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004). The Bank argues that it took extensive steps to reject the trusteeship and that it made the reimbursements in a good-faith attempt to preserve trust property. Even if this is true, the Bank still rejected Cossey's request for an accounting and insisted on going to trial on this issue. Had the Bank performed the accounting, no fees would be necessary. In addition, Cossey's petition for attorney's fees was well supported by invoices and affidavits. There is nothing to indicate that the court failed to take these into account or that it made the award without due consideration. Thus, the court's fee award was not an abuse of discretion.

Affirmed; court of appeals opinion vacated.

BAKER, J., concurs.

*Rose Law Firm, A Professional Association*, by: *Amanda K. Wofford*, for appellant.

*Kamps & Stotts, PLLC*, by: *David Weil Kamps*, for appellee.