SLIP OPINION

Cite as 2016 Ark. 138

# SUPREME COURT OF ARKANSAS

No. CV-15-391

COVENANT PRESBYTERY

APPELLANT
CROSS-APPELLEE

V.

FIRST BAPTIST CHURCH, OSCEOLA, ARKANSAS

APPELLEE
CROSS-APPELLANT

SUN TRUST BANK, AS TRUSTEE UNDER THE WILL OF STANLEY D. CARPENTER

APPELLEE
CROSS-APPELLEE

Opinion Delivered: March 31, 2016

APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, OSCEOLA DISTRICT
[NO. CV 2011-101]

HONORABLE RANDY F. PHILHOURS, JUDGE

REVERSED ON DIRECT APPEAL; CROSS-APPEAL DISMISSED; COURT OF APPEALS' OPINION VACATED.

**RHONDA K. WOOD, Associate Justice**

Covenant Presbytery appeals from a Mississippi County Circuit Court's order which applied the doctrine of *cy pres* to reform a trust. On direct appeal, Covenant Presbytery argues first that the circuit court erred in applying the *cy pres* doctrine because there was no charitable trust and because the gift to First Presbyterian vested upon the settlor's death. Second, it argues that, if the circuit court was correct to apply *cy pres*, then the court's application of the doctrine does not comport with the settlor's intent. In its cross-appeal, First Baptist contends that the circuit court erred in denying its claim that the trustee, SunTrust, breached its fiduciary duty. We granted First Baptist's petition for review of the court of appeals' decision. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *See, e.g.*, *In re Matter of Hamilton Living Trust*,

2015 Ark. 367, 471 S.W.3d 203.  We vacate the court of appeals' opinion, reverse on the direct appeal, and dismiss the cross-appeal.

I.      *Factual and Procedural Background*

In June of 1965, Stanley D. Carpenter executed a document entitled "Last Will and Testament" ("will").[1]   The document named National Bank of Commerce trustee and executor,

> I nominate, constitute and appoint the National Bank of Commerce in Memphis, Tennessee, as executor and trustee of my estate, granting to them full power and authority to take possession of, hold, manage, invest and in every way to control and supervise all of my property in accordance with the terms of this Last Will and Testament and under the laws of the State of Arkansas; . . .

Carpenter owned 237.87 acres of farmland in Mississippi County, and the will further provided that Carpenter's four relatives each would receive a one-fourth interest in the "net farm rents" for "life."   Additionally, two Osceola churches, First Presbyterian and First Baptist, were to receive "[a]ll the rest, residue and remainder" of the estate in equal shares. The will directed the trustee "to sell all real estate in their discretion as soon as the law permit[s], taking into consideration the existence of the life estates hereinbefore created, and distribution of the proceeds therefrom in accordance with this bequest."

Carpenter died in 1967.   When Carpenter's will was probated, his farmland was transferred, pursuant to court order, to National Bank of Commerce, as trustee.   National Bank leased the farmland and disbursed the income to the four life-estate beneficiaries.   As

---

[1] Carpenter also executed four codicils to his Last Will and Testament; however, these are unimportant for purposes of this appeal.

a life-estate beneficiary died, National Bank would divide and remit the deceased beneficiary's income equally to First Presbyterian and First Baptist.

In 2004, First Presbyterian voted to dissolve its congregation. In an "Overture of Dissolution" all assets of the church that had not previously been sold or distributed were transferred to Covenant Presbytery. First Presbyterian notified National Bank that First Presbyterian had dissolved and requested that all future payments from Carpenter's estate be made to Covenant Presbytery. Thereafter, National Bank distributed the income share to Covenant Presbytery.

In 2005, SunTrust acquired National Bank and succeeded as trustee for the trust. SunTrust continued to distribute payments to beneficiaries, including First Baptist and Covenant Presbytery. In 2011, a First Baptist board member contacted the trust advisor assigned to the trust and expressed his belief that the trust payments to Covenant Presbytery were improper. Thereafter, SunTrust filed a "Petition and Request for Instructions and Declaration of Rights" against First Baptist and Covenant Presbytery requesting that the circuit court determine the rights and interests of these parties in the farmland and its income. First Baptist counterclaimed against SunTrust for breach of fiduciary duty.

Following a bench trial in December 2012, the circuit court concluded that the will created a testamentary trust for the benefit of two churches in Osceola—First Presbyterian and First Baptist. Finding that Carpenter's intention was to benefit churches in his community and that First Presbyterian no longer had a church in Osceola, the circuit court applied the *cy pres* doctrine and reformed the trust to provide that First Presbyterian's distributions from the summer of 2011 forward should be transferred to First Baptist. The



circuit court also held that SunTrust did not breach its fiduciary duty because it did not obtain actual knowledge of a potential dispute over payments with Covenant Presbytery until the summer of 2011. We granted First Baptist's petition for review of the court of appeals' decision to reverse and remand.

### III.    *Appeal*

This case is subject to a de novo standard of review. *See In re Estate of Thompson*, 2014 Ark. 237, 434 S.W.3d 877. The circuit court's decision should not be reversed unless there is a finding that is clearly erroneous. *Id.* A finding is clearly erroneous when the appellate court is left with a firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the circuit court to review the credibility of the witnesses. *Id.*

This court's primary objective when construing the language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to the law. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004). Where the language of a will expressly states the testator's intention, the intent must be gathered from the four corners of the instrument. *Id.* It is only proper to invoke the rules of construction when the language is ambiguous. *Id.* In order to determine the intentions of the testator, consideration must be given to every part of the testamentary instrument. *Id.* Extrinsic evidence may be received on the issue of the testator's intent if the terms of the will or trust are ambiguous. *Burnett v. First Commercial Tr. Co.*, 327 Ark. 430, 939 S.W.2d 827 (1997).

In its first point on appeal, Covenant Presbytery argues that the will created a testamentary trust for the sole purpose of managing the property and paying income to the life-estate beneficiaries. It contends that First Presbyterian's interest vested upon Carpenter's death and that the will did not direct the trustee to maintain the property for any charitable purpose; and therefore, the will did not create a charitable trust. Because First Presbyterian's interest in the trust vested upon Carpenter's death without limitation, it was freely assignable.

First Baptist agrees that the will created a testamentary trust for the administration of the life estate. However, it argues that the testamentary trust is also a charitable trust; and therefore, the churches' interests did not vest upon Carpenter's death. It further contends that First Presbyterian did not have an assignable interest in the property, and once First Presbyterian ceased to exist, it became proper for the court to employ the *cy pres* doctrine.

We agree with Covenant Presbytery's first point on appeal. First Presbyterian's interest vested upon Carpenter's death; therefore, we do not address its second point regarding the court's method of applying the *cy pres* doctrine. Covenant Presbytery correctly states that the churches are vested remainder beneficiaries. The Arkansas Trust Code,[2] defines "beneficiary," in part, as a person that "has a present or future beneficial interest in a trust, vested or contingent." Ark. Code Ann. § 28-73-103(3)(A). A vested remainder is a "present interest that cannot be defeated by any contingency." *Dickerson v. Union Nat'l Bank of Little Rock*, 268 Ark. 292, 298, 595 S.W.2d 677, 680 (1980). An interest in a vested

---

[2] Arkansas Code Annotated §§ 28-73-101 et seq. (Repl. 2012).

remainder "can be transferred . . . even though the right of possession may not accrue until some time in the future." *Id.*

In *Dickerson*, we described the "simplest example" of a vested remainder as a conveyance or devise "to A for life, remainder to B." *Id.* This is precisely the situation here: Carpenter conveyed the rents of the farm to four relatives for life and the remainder of his property to First Baptist and First Presbyterian. The will clearly states that Carpenter intended to give "[a]ll of the rest, residue and remainder of my estate . . . in equal shares, and to each, an undivided one-half each, to the First Presbyterian Church . . . and the First Baptist Church . . . ." This language created a present interest in the churches, which vested on Carpenter's death.

We reject First Baptist's argument that First Presbyterian did not receive a vested remainder because the farmland was placed in a charitable trust. Because the will did not create a charitable trust, the *cy pres* doctrine was inapplicable. *See* Ark. Code Ann. § 28-73-413(a). The fundamental principle in construing a trust is to ascertain and effectuate the intent of the settlor. *Bailey*, 359 Ark. at 432, 198 S.W.3d at 413. Carpenter's devise to First Baptist and First Presbyterian did not contain a charitable purpose, general or specific, for devising the farmland. Accordingly, the pertinent legal inquiry is whether a trust can be designated as charitable when no charitable purpose was identified by the settlor. Because we find that it cannot, we reverse the circuit court.

The Arkansas Trust Code defines a charitable trust as "a trust, or portion of a trust, created for a charitable purpose." Ark. Code Ann. § 28-73-103(4). It is a "fiduciary relationship with respect to property arising as a result of a manifestation of an intention to

create it, and subjecting the person by whom the property is held to equitable duties to deal with property for a charitable purpose." Restatement (Second) of Trusts § 348, Westlaw (database updated May 2014). In a charitable trust, "the beneficial interest is not given to individual beneficiaries, but the property is devoted to the accomplishment of purposes beneficial to the community." *Id.* § 365 cmt a. In other words, when a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. Charitable purposes include "the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community." Ark. Code Ann. § 28-73-405. As we have previously stated, "[i]n creating a charitable trust the settlor must describe a purpose of substantial public interest." *Kohn v. Pearson*, 282 Ark. 418, 420, 670 S.W.2d 795, 796 (1984).

Although First Presbyterian and First Baptist are charitable organizations, the will neither provided that the devise was to serve a charitable purpose nor restricted the churches from using the farm's proceeds for noncharitable purposes. Rather, a plain reading of the instrument reveals that the only identifiable purpose of the testamentary trust was to administer the life estates, which are not charities. The will directed the trustee to "give, devise and bequeath" the residue of his property to the churches. It then directed the trustee "to sell all real estate in their discretion as soon as the law permit[s], taking into consideration the existence of the life estates hereinbefore created, and distribution of the proceeds therefrom in accordance with this bequest." Giving these plain words their ordinary meaning, we find that the only duty Carpenter gave to the trustee was to hold the farmland

as a testamentary trust during the life of the lifetime beneficiaries and to thereafter distribute the proceeds of the property to the churches. It does not direct the bank trustee or the churches to ensure that the use of the property be for a purpose benefiting any charity. Our statute limits the application of *cy pres* to instances where a "particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful." Ark. Code Ann. § 28-73-413(a). Since the will identifies no particular charitable purpose, *cy pres* could not be used to reform the trust.

First Baptist asserts that a charitable trust may be created as long as the beneficiary is a charity. In support of this statement, First Baptist relies on our decision in *Curry v. Guaranty Loan Co.*, 212 Ark. 988, 208 S.W. 465 (1948). In that case, the settlor directed that his property be received by some organization selected by trustees "whose purpose is to discover a cure for rheumatism." *Id.* She further provided that if the trustees could not agree upon a suitable recipient, they might donate the fund to another charitable institution. *Id.* Thus, the settlor identified the general purpose of the trust but left the details of its administration to be settled by the trustee under the superintendence of the court. *See id.* This is not analogous to our case where no purpose, general or particular, was stated. Unlike in *Curry*, no language in this will allows us to find a charitable purpose, which is required to create a charitable trust. Accordingly, as First Presbyterian received a vested remainder interest upon Carpenter's death and the will did not create a charitable trust, the circuit court erroneously applied the *cy pres* doctrine.

Finally, First Baptist argues that even if there was no charitable trust, Covenant Presbytery has no interest in the farmland because First Presbyterian failed to deed its interest

to Covenant Presbytery. This argument is unpersuasive. The parties admitted into the record a written document entitled "Stipulations Agreed By All Parties." It provides that First Presbyterian named Covenant Presbytery as its successor in interest and that Covenant Presbytery had acted as the successor in interest. First Presbyterian's assets to which Covenant Presbytery succeeded included its interest in the remainder of Carpenter's estate. This puts the issue of assignment squarely within the scope of the parties' stipulation of fact. For this reason, we hold that per the parties' stipulation, First Presbyterian assigned its rights under the trust to Covenant Presbytery.

IV.    *Cross-Appeal*

On cross-appeal, First Baptist argues that the trial court erred in denying its claim that SunTrust breached its fiduciary duty when it paid income from the trust to Covenant Presbytery, as it was not a named beneficiary. Because we reverse the circuit court and hold that Covenant Presbytery is the successor in interest to First Presbyterian under the trust, we dismiss the cross-appeal because this issue is moot. *See Butt v. Evans Law Firm, P.A.*, 351 Ark. 566, 98 S.W.3d 1 (2001).

Reversed on direct appeal; cross-appeal dismissed; court of appeals' opinion vacated.

DANIELSON and GOODSON, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.**  I respectfully dissent. The majority's analysis in this case is fatally flawed. The majority begins its analysis by addressing the issue of whether the churches had a vested interest in the farmland upon Mr. Carpenter's death. However, the initial inquiry should be to determine the intent of the settlor. Carpenter

clearly intended to create a charitable trust to which the circuit court properly applied the doctrine of *cy pres*. Accordingly, I would affirm the circuit court's rulings.

Carpenter's Will gives four family members each a one-fourth interest in the net farm rents during his or her lifetime with the rents to be paid to Carpenter's estate upon the death of the life beneficiary. The Will further provides as follows:

All of the rest, residue and remainder of my estate I give . . . in equal shares . . . to the First Presbyterian Church, Osceola, Arkansas, and the First Baptist Church, Osceola, Arkansas. . . . I further direct my trustee to sell all real estate in their discretion as soon as the law permit[s], taking into consideration the existence of the life estates hereinbefore created, and distribution of the proceeds therefrom in accordance with this bequest.

The Will clearly created a testamentary trust, a portion of which was a charitable trust for the benefit of the two local churches. Arkansas Code Annotated section 28-73-103(4) (Repl. 2012) defines a charitable trust as "a trust, or portion of a trust, created for a charitable purpose described in § 28-73-405(a)." Section 28-73-405(a) expressly identifies "the advancement of education or religion" as a permissible purpose for a charitable trust.

The majority correctly quotes Restatement (Second) of Trusts § 348, which defines a charitable trust as a "fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with property for a charitable purpose." The majority then goes on to say that in this case, "a plain reading of the instrument reveals that the only identifiable purpose of the testamentary trust was to administer the life estates, which are not charities." This flawed reasoning completely ignores the intention of the settlor, which was to benefit the community through the advancement of religion.

Covenant argues that Carpenter's Will did not create a charitable trust, despite the fact that Carpenter named two charitable institutions, First Presbyterian and First Baptist. Specifically, Covenant contends that the Will did not create a charitable trust because Carpenter did not explicitly state the purposes for which the churches should use the trust income. Essentially, Covenant is arguing that Carpenter must have included a statement that attached strings to the devise, thereby controlling the way the churches could use the funds. The plain language of section 28-73-405 clearly does not require such a statement. Section 28-73-405(b) provides in part that "[i]f the terms of a charitable trust do not indicate a particular charitable purpose or beneficiary, the court may select one (1) or more charitable purposes or beneficiaries."

There is no requirement that the Will set out the charitable purpose itself, as long as it is clear that the settlor intended to provide for a charitable purpose. Furthermore, designating the remainder of the estate to two churches is permissible under section 28-73-405(a) as an advancement of religion. Carpenter specifically selected two churches, First Baptist and First Presbyterian, as beneficiaries. This selection clearly indicates an intent to provide for a charitable purpose.

In addition, I disagree with the majority's opinion that the churches had a vested interest in the farmland upon Mr. Carpenter's death. According to the Will, the property was to be held in trust during the life of the beneficiaries and then sold with the proceeds divided equally between the two churches. The Will did not instruct the trustee to deed the property to the churches upon the death of the life beneficiaries. Neither church possessed ownership interest in the property itself, but only in the proceeds after the property

was managed and then sold by the trustee. Accordingly, I would affirm the circuit court's ruling that the churches did not have a vested interest in the farm property.

Because the trust is a charitable trust, I would address the issue of whether the circuit court correctly applied the *cy pres* doctrine in transferring First Presbyterian's interest in the farm property to First Baptist. "The *cy pres* doctrine, as applied in the United States, is the doctrine of approximation. In its last analysis it is found to be a simple rule of judicial construction designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor." *State ex rel. Att'y Gen. v. Van Buren Sch. Dist. No. 42*, 191 Ark. 1096, 1102, 89 S.W.2d 605, 607–08 (1936). The equitable doctrine of *cy pres* is

> the principle that equity will, when a charity originally or later becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. It is the theory that equity has the power to mould the charitable trust to meet emergencies.

*Trevathan v. Ringgold-Noland Found., Inc.*, 241 Ark. 758, 763, 410 S.W.2d 132, 135 (1967) (quoting *Slade v. Gammill*, 226 Ark. 244, 252, 289 S.W.2d 176, 181 (1956)).

Arkansas has codified the *cy pres* doctrine at Arkansas Code Annotated section 28-73-413:

> (a) Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful:
>
> > (1) the trust does not fail, in whole or in part;
> >
> > (2) the trust property does not revert to the settlor or the settlor's successors in interest; and
> >
> > (3) a court may apply *cy pres* to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes.

(b) A provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary prevails over the power of a court under subsection (a) to apply *cy pres* to modify or terminate the trust only if, when the provision takes effect:

(1) the trust property is to revert to the settlor and the settlor is still living; or

(2) less than thirty (30) years have elapsed since the date of the trust's creation.

Ark. Code Ann. § 28-73-413.

First Presbyterian Church dissolved in 2004. All assets and property that had not been previously sold or distributed were transferred to Covenant Presbytery, a division of the Presbyterian Church in America. The circuit court found that because the First Presbyterian Church of Osceola no longer exists, it was appropriate to apply the *cy pres* doctrine to name a new beneficiary of the interest devised to First Presbyterian. Applying the *cy pres* doctrine, the circuit court interpreted the terms of the trust and the Will to mean that Carpenter's intention was to benefit two churches in Osceola, Arkansas, because that is where Carpenter lived. The court found that "the intention of Stanley Carpenter was to benefit churches in his hometown of Osceola, rather than to benefit Covenant Presbytery, which did not exist at the time of his death and no longer administers a church in Osceola." Because First Presbyterian was no longer available as a charitable purpose, the court found that the portion of the trust that was to benefit First Presbyterian should be transferred to First Baptist.

Covenant argues that the circuit court's conclusion was clearly erroneous because the Will indicates that Carpenter sought to benefit both the Presbyterian and Baptist faiths and that there was no indication that he intended that his gifts must remain local to Osceola. We review the circuit court's construction and interpretation of trusts de novo. *See In re*

*Matter of Hamilton Living Tr.*, 2015 Ark. 367, 471 S.W.3d 203. We will not reverse the circuit court's factual findings unless they are clearly erroneous. *Id.* The Will indicates an intent to benefit two local churches, and it is clear that Carpenter wanted to benefit First Baptist. Whether Carpenter would have wanted First Presbyterian's interest to transfer to First Baptist, or whether he would have chosen a different beneficiary is unclear. However, the question here is whether the circuit court's findings in applying the *cy pres* doctrine were clearly erroneous. *See, e.g.*, *Lowery v. Jones*, 272 Ark. 55, 611 S.W.2d 759 (1981). Based on the evidence presented, I cannot say that the findings were clearly erroneous. Therefore, I would affirm the circuit court's application of the *cy pres* doctrine.

Goodson, J., joins in this dissent.

*Sanford Law Firm, PLLC*, by: *Josh Sanford*, for appellant.

*Branch, Thompson, Warmath & Dale, P.A.*, by: *Robert F. Thompson III*, for appellee First Baptist Church, Osceola.

*Rose Law Firm*, by: *Craig S. Lair* and *Bourgon B. Reynolds*, for appellee SunTrust Bank.