Cite as 2021 Ark. App. 175

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-18-975

| | |
|---|---|
| TERESA GENZ, KATHERN COOKSEY, CASSANDRA JULICH, LOGAN GENZ, TAYLOR GENZ, JERRY GENZ, AND LANCE COOKSEY<br><br>APPELLANTS | Opinion Delivered: April 21, 2021<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NOS. 72CV-16-1044 & 72PR-17-501] |
| V. | |
| AMY CARTER COOKSEY, INDIVIDUALLY AND AS TRUSTEE OF THE JAMES E. COOKSEY TRUST U/T/D MARCH 11, 2010<br><br>APPELLEE | HONORABLE DOUG MARTIN, JUDGE<br><br><br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This is an intrafamily dispute over the estate plan prepared by the decedent, James Cooksey. On one side are the decedent's daughter, Teresa Genz (Teresa), and the decedent's ex-wife, Kathern Cooksey (Kathern). They are the principal appellants.[1] On the other side is appellee Amy Cooksey (Amy), the decedent's widow and the trustee of the James E. Cooksey Trust (the trust). Appellants sought to reform the trust and to reform a commissioner's deed conveying property to the decedent and Kathern. In the alternative, appellants sought to impose a constructive trust on that property. After a bench trial, the

---

[1]Other appellants include Jerry Genz, Teresa's husband; the decedent's son, Lance Cooksey (Lance); and Teresa and Jerry's adult children, Taylor Genz, Cassandra Julich, and Logan Genz.

circuit court granted a motion to dismiss at the close of appellants' case-in-chief. The court also adopted the plan for distribution of the trust assets proposed by Amy. We affirm.

The decedent and Kathern married and had two children before divorcing in 1994. The decedent and Amy had been in a relationship approximately eighteen years when the decedent's estate plan was created. The decedent and Amy would later marry in December 2015, shortly before the decedent's death in February 2016.

The James E. Cooksey Trust was executed in March 2010. At the time of the creation of the trust, the decedent owned several tracts of real property. As pertinent to this appeal, the decedent owned two 40-acre tracts, referred to as the homestead property. This property was conveyed to the trust by quitclaim deed contemporaneously with the execution of the trust. The homestead property was located near another 121-acre tract the decedent owned that had been in his family for many years. The 121-acre tract was also conveyed to the trust. The decedent also executed a beneficiary deed conveying his residence and an adjacent 40-acre tract (the residence property) to Amy upon his death.

At the time of his death, the decedent and Kathern each held an interest in the farm where Teresa and Jerry Genz lived. That property, referred to as the Genz farm, had been foreclosed upon and then had been purchased by the decedent and Kathern. Testimony was presented that there was an agreement between the decedent, Kathern, Teresa, and Jerry in which the decedent and Kathern would borrow the funds to make the purchase and Teresa and Jerry would make the payments. According to appellants, the decedent and Kathern were advised that the property would be conveyed to them as joint tenants with right of survivorship and that this information was passed to the circuit court clerk for preparation

of the commissioner's deed. However, the commissioner's deed ultimately conveyed the property to the decedent and Kathern without specifying the type of tenancy conveyed.

The trust provided that upon the decedent's death, his assets would be distributed as follows: (1) certain personal property, including horses, tack, horse trailers, a bobcat loader, a pickup truck, and all household goods and furnishings—with the exception of antiques and family heirlooms—were to be distributed to Amy; (2) machinery and equipment were to be sold and the proceeds equally divided between Amy, Teresa, and Lance; (3) all cattle were to be distributed to Teresa and her children; (4) all family antiques and heirlooms were to be distributed to Teresa; (5) all bank accounts, stocks, and life insurance proceeds were to go to Amy; (6) the 121-acre parcel was to be distributed to Teresa and her children as joint tenants with right of survivorship; (7) all the remaining trust assets were to be divided equally between Amy and Teresa. The trust was silent as to the decedent's interest in the Genz farm.

The trust named the decedent as trustee during his lifetime. After his death, Amy and Teresa were to serve jointly as cotrustees. If either Amy or Teresa was unwilling or unable to serve, the other was to serve as sole successor trustee. The trustees were to account to the beneficiaries at least quarterly.

The decedent executed a pourover will contemporaneously with the establishment of the trust. All the decedent's estate was bequeathed to the trust. Amy was appointed executrix with Teresa named as substitute executrix.

Following the decedent's death in February 2016, on May 20, Amy filed a petition seeking to remove Teresa as cotrustee, alleging that Teresa refused to communicate and

cooperate with her in the administration of the trust. Amy asserted that this was done in bad faith to deprive her of assets she was entitled to under the trust. Teresa did not respond to the petition, and by order entered on July 28, 2016, she was removed as cotrustee with Amy remaining as the sole trustee.

On February 21, 2017, Amy, as trustee, executed a quitclaim deed conveying the homestead property's forty-acre pasture to Teresa. She also executed another quitclaim deed conveying the actual homestead place to herself.

By agreement reached after Teresa obtained a temporary restraining order halting an earlier sale, an auction of the decedent's personal property was held in April 2017. Teresa contended that some of the property to be sold was to be distributed to her under the trust. The agreement was that Teresa could bid on any item that she claimed to be hers under the trust and, if successful, would not be required to pay for such items on the day of the auction. Amy later asserted that Teresa purchased items that were not antiques or family heirlooms, while Teresa contended that she had to purchase lots in which antiques were comingled with non-antiques. The upshot is that neither Teresa, Amy, nor Lance paid for their purchases. The trust was owed approximately $45,000 for these purchases.

On May 16, Amy filed an affidavit for collection of small estate in the probate division of circuit court. This companion case was later consolidated for trial with the trust case. In her affidavit, Amy asserted that the decedent owned a one-half undivided interest in the Genz farm property, and that under the decedent's will, that interest would go to the trust.

On July 23, Teresa and Kathern filed a petition seeking reformation of the trust, reformation of the commissioner's deed, the removal of Amy as trustee, the imposition of a

4

constructive trust, and damages for Amy's breach of the trust. The petition alleged that there had been a scrivener's error concerning the homestead property intended for Teresa. The petition sought reformation of the commissioner's deed where the decedent and Kathern purchased the Genz farm property at a foreclosure sale, asserting that the deed was intended to convey the property as joint tenants with a right of survivorship but mistakenly named them as tenants in common. The petition also alleged that Amy had breached her duties as trustee in various ways and sought Amy's removal as trustee and damages for her breach of trust. The petition further asserted that a few days before his death, the decedent gave Teresa his 2004 Dodge pickup truck. Jerry and the Genz children later filed separate petitions seeking to reform the commissioner's deed and to reform the trust and have Amy removed as trustee.

The case proceeded to a bench trial on appellants' petitions over several days in May 2018. Susan Fox, the attorney who prepared the trust, the will, the quitclaim deeds conveying the real property to the trust, and other ancillary estate-planning documents, admitted that she made a mistake concerning the homestead property in the trust. Fox testified that the decedent wanted to keep the homestead property in his family and did not intend for the homestead property to be distributed to Amy. Fox and other witnesses testified that the decedent intended for Teresa to receive the property.

According to Teresa, Jerry, and Logan Genz, the decedent gave a 2004 Dodge pickup truck to Teresa as a gift. Amy testified that the decedent had merely loaned the vehicle to Teresa.

There was also testimony from Kathern, Teresa, Jerry, and a bank loan officer about the agreement concerning the purchase of the Genz farm property wherein the decedent and Kathern would borrow the funds to purchase the property at a foreclosure sale and Teresa and Jerry would make the payments. These witnesses testified that it was intended that the property would be conveyed to the decedent and Kathern as joint tenants with right of survivorship.

At the close of appellants' case-in-chief, Amy moved for an involuntary dismissal.[2] Amy argued that she was entitled to dismissal of the claim for reformation of the commissioner's deed because there was no evidence that a mistake was made in the conveyance. On the claim for reformation of the trust, Amy further argued that there was no evidence of a scrivener's error or that the final draft of the trust was inconsistent with the decedent's intentions. Amy also commented on the credibility of Susan Fox. Amy next argued that she was entitled to a dismissal on appellants' claims against her as trustee because appellants had failed to prove their damages resulting from her alleged breaches of the trust. Appellants responded, arguing that they presented sufficient evidence to show that they were entitled to the relief sought. They also argued that the scrivener's error was precisely the situation for which reformation applied. Appellants further argued that the court should impose a constructive trust on the Genz farm property. The court granted the motion for the reasons argued by Amy.

_____

[2]Actually, Amy moved for a "directed verdict" at the close of appellants' case-in-chief. The proper motion to challenge the sufficiency of an opponent's evidence in a nonjury case is a motion to dismiss. *Phillips v. Denton*, 2018 Ark. App. 90, at 5, 543 S.W.3d 508, 511.

6

Amy then proceeded to testify about her proposed distribution of the trust assets. Amy testified that she sought reimbursement for certain expenses as trustee. Her proposed distribution plan is summarized in an exhibit admitted into evidence. Part of the plan involved the debt for items purchased at the April 2017 auction. Amy owed $24,975; Lance Cooksey owed $19,559; and Teresa owed approximately $1,150. These sums, together with a bank account having a balance of $24,964.70, represented the trust's total liquid assets of $70,647. Amy testified that if the sums were collected from her, Teresa, and Lance, each beneficiary would receive approximately $23,550 before adjustments for expenses were made. According to Amy's exhibit, after adjustments, she would receive approximately $5,800; Teresa would receive approximately $16,000; and Lance would receive approximately $3,200. This approximately equaled the amount of the bank account. Amy also sought a trustee's fee of $21,000 and an attorney's fee of over $40,000. As something of a final summation, Amy's attorney proposed as an equitable solution that Amy retain the bank account, "call everything else even, everybody keep what they got, nobody owes anything." The circuit court agreed with this suggestion.

On May 29, 2018, prior to the entry of the court's order, appellants filed their Arkansas Rule of Civil Procedure 52(a) motion for specific findings of fact and conclusions of law on seven questions. Amy argued in response that because the court granted a motion for involuntary dismissal of appellants' petitions, no findings were required.

On June 4, the circuit court entered three orders deciding the outstanding issues. The first order memorialized the court's ruling in the trust case dismissing appellants' petitions. The court found that Amy's proposed distribution was appropriate and directed

7

that it be made. The court further found that Amy had discharged her duties as trustee and was entitled to a trustee's fee and an attorney's fee. The court noted that Amy was seeking a trustee's fee of $20,000 and an attorney's fee of $40,000. The court found that the trust's only liquid asset was a bank account with a balance of $24,964.70 and set this sum off to Amy as partial compensation of the trustee's fee, the attorney's fee, and other sums awarded Amy. All other trust assets were determined to be owned by the party in possession of those assets. Neither Amy, Teresa, nor Lance was required to pay the trust for any unpaid sums from their purchase of trust assets at the April 2017 auction.

The second order was entered in the companion probate case. There, the court found that the decedent's one-half undivided interest in the foreclosure property (Genz farm) was, under the decedent's will, vested in the trust.

Finally, the court entered its order denying appellants' motion for findings under Rule 52(a) "for the reasons set out in [Amy's] response." After the court denied appellants' Rule 52(b) motions seeking to alter or amend the orders, this appeal followed.

As mentioned at the outset, this case was decided by the circuit court's granting Amy's motion to dismiss appellants' petitions at the close of appellants' case-in-chief. However, both parties argue this case on appeal as if the circuit court had decided the case on the merits instead of on a motion to dismiss.[3] This is understandable as Amy had testified as part of appellants' case-in-chief, and after appellants rested their case, the court inquired of Amy's attorney whether he had any further questions for Amy. He did not. The record

---

[3]In their reply brief, appellants do argue that the circuit court erred in granting a "directed verdict."

8

contains no indication that Amy had any other witnesses to offer. Moreover, some of the circuit court's comments from the bench appear as if they were rulings on the merits. As will be seen, this has consequences for our consideration of this appeal. *See Rymor Builders v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007).

The courts of equity have exclusive jurisdiction in cases involving matters of the construction, interpretation, and operation of trusts. *Fisher v. Boling*, 2019 Ark. App. 225, 575 S.W.3d 592. We conduct a de novo review on the record of matters that sound in equity and will not reverse a finding by a circuit court in an equity case unless it is clearly erroneous. *Id.* A finding is clearly erroneous when, even though there is some evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id.* Likewise, the standard of review on appeal in reformation cases is de novo. *Longing Fam. Revocable Tr. v. Snowden*, 2013 Ark. App. 81, 426 S.W.3d 488.

Appellants first argue that the circuit court erred in failing to reform the trust. They argue that they presented sufficient evidence to warrant reformation of the trust. Appellants contend that it was the decedent's intention that Teresa and her children receive the 200-acre "homestead" property and that the trust mistakenly referred to the 121–acre parcel instead.

The mistake of a draftsman, whether he is one of the parties or merely a scrivener, is adequate grounds for relief provided only that the writing fails to reflect the parties' true understanding. *Kohn v. Pearson*, 282 Ark. 418, 670 S.W.2d 795 (1984). Susan Fox, the attorney who prepared the trust and deeds conveying the real property to the trust, admitted

9

that she had made a mistake in describing certain property in the trust and deeds. Fox and other witnesses testified that the decedent intended for Teresa to receive the property.

We cannot reverse the circuit court's order on this issue even though the court erred in its ruling on the motion to dismiss. In making the motion at the close of appellants' case-in-chief, Amy's attorney commented on Fox's credibility. In granting the motion, the circuit court stated that it "hate[d] to comment on the credibility of Ms. Fox's testimony" concerning events that occurred nine years earlier before saying that it was impressed with Fox's recollection on direct testimony and less so with her testimony on cross-examination.

The credibility of the witnesses is a matter for the court acting as a finder of fact at the close of all the evidence, not as a matter for the court in evaluating whether the petitioner had presented a prima facie case for purposes of a motion to dismiss. *See Rymor Builders*, *supra* (holding circuit court erred in weighing credibility of evidence on a motion to dismiss at close of plaintiff's case-in-chief). Here, the circuit court erred when it made a premature credibility finding. However, appellants do not seek reversal on that basis. Instead, they rely on Fox's admission of a mistake to argue that a scrivener's error is sufficient to justify reformation. But appellants' claim for reformation based on a scrivener's error turns on that very finding, albeit prematurely made, on the scrivener's credibility. Moreover, appellants' argument is basically a request that this court reweigh the evidence differently than the circuit court. Arguments asking that we reweigh the evidence are not reversible-error arguments. *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 15, 554 S.W.3d 285, 294. This court cannot act as a super fact-finder or second-guess the circuit court's

10

credibility determination. *Id*. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Rymor Builders*, *supra*.

Appellants' second point is that the circuit court erred in failing to reform the commissioner's deed or impose a constructive trust on the Genz farm. The court in the trust case denied reformation, finding that there was no evidence that a mistake was made in the commissioner's deed, while the probate court ruled that the decedent's interest in the Genz farm passed to the trust under the provisions of his will.

In 1988, Teresa and Jerry purchased the Genz farm from Jerry's parents. In 2009, they defaulted on their mortgage and the bank foreclosed. The decedent, Kathern, Teresa, and Jerry came up with a plan, approved by the bank, in which the decedent and Kathern would purchase the property at the foreclosure sale, finance it in their own names, and have Teresa and Jerry make the payments. On July 18, 2009, the circuit clerk issued the commissioner's deed, naming the grantees as "James E. and Kathern Cooksey" without further designation.

Under Arkansas law, a deed to two or more persons presumptively creates a tenancy in common unless the deed expressly creates a joint tenancy. Ark. Code Ann. § 18-12-603 (Repl. 2015).[4] Section 18-12-603 provides a rule of construction that presumptively construes an instrument to create a tenancy in common rather than a joint tenancy. *Tripp v. Miller*, 82 Ark. App. 236, 244, 105 S.W.3d 804, 810 (2003). In judicial sales, such as foreclosure sales, the court itself is the vendor. *Midfirst Bank v. Sumpter*, 2016 Ark. App. 552,

---

[4]That section reads as follows: "Every interest in real estate granted or devised to two (2) or more persons, other than executors and trustees as such, shall be in tenancy in common unless expressly declared in the grant or devise to be a joint tenancy."

508 S.W.3d 69. The question of whether a survivorship interest was intended should be determined from the four corners of the deed. *Brissett v. Sykes*, 313 Ark. 515, 518, 855 S.W.2d 330, 332 (1993). Here, nothing appears from the four corners of the commissioner's deed in this case showing that the foreclosure court intended to convey a survivorship interest to the decedent and Kathern. Even if there were such evidence of the foreclosure court's intention, it cannot prevail over the statute. To allow that would be to render section 18-12-603 meaningless. *James v. Taylor*, 62 Ark. App. 130, 969 S.W.2d 672 (1998).

Because the commissioner's deed is silent and does not specify the tenancy conveyed to the decedent and Kathern, section 18-12-603 applies, and the result is that the decedent and Kathern took the property as tenants in common, not as joint tenants with right of survivorship. Upon the decedent's death, his undivided one-half interest in the property passed to the trust under the provisions of his will. Therefore, the circuit court reached the correct result in denying reformation.

We cannot consider appellants' alternative argument under this point—that the circuit court erred in failing to impose a constructive trust in their favor—because the court never specifically addressed appellants' request. In the order entered in the trust case, the court stated that the issue of the reformation of the commissioner's deed was decided in the companion probate case. The order in the probate case merely stated that the real property described in the order was vested in the trust pursuant to the will.

This argument is not preserved for our review because the circuit court never made a clear, specific ruling on the imposition of a constructive trust. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal, and appellants' failure to

obtain a ruling precludes our review on appeal. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, at 9, 427 S.W.3d 651, 657.

Appellants next argue that Teresa proved by clear and convincing evidence that the decedent made a gift of the 2004 pickup truck to her. This argument is likewise not preserved for our review because the circuit court never made a specific ruling on whether there was a gift of the truck to Teresa. *Id.*

For their fourth point, appellants argue that the circuit court erred in denying their posttrial motion for findings of fact and conclusions of law under Ark. R. Civ. P. 52(a). They argue that the rule is mandatory if the motion requesting the findings is filed prior to entry of judgment. We find no error on this point.

Rule 52 provides in pertinent part as follows:

> (a)(1) Effect. If requested by a party at any time prior to entry of judgment, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions, the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. . . . *Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules.*

Ark. R. Civ. P. 52(a)(1) (emphasis added).

Other than a reference to Rule 52, appellants cite no authority in support of their argument. We have held that we will not consider a point raised on appeal where the appellant fails to cite authority or make any convincing argument to support the point. *Se. Ark. Landfill, Inc. v. State*, 313 Ark. 669, 676, 858 S.W.2d 665, 669 (1993). Moreover, appellants' argument ignores the rule's emphasized language above that the circuit court is not required to make findings when ruling on motions. Instead, their entire argument rests

13

on the presence of the word "shall," requiring the circuit court to make findings if they are timely requested. This results in appellants' failure to address the circuit court's basis for the denial of their motion—that findings are not required when the court is ruling on a motion.

In their fifth point, appellants assert that the circuit court erred in failing to hold Amy accountable as trustee because she violated her duties as trustee by self-dealing and acting in her own personal interest. We disagree.

At the close of appellants' case-in-chief, Amy moved for dismissal on the basis that appellants had failed to prove they were damaged by her alleged breaches of both the trust and her duties under the trust. In granting the motion on this point, the circuit court stated that "not only do I agree with the damages argument that [Amy's attorney] made but I also think that bad faith has not been shown." However, appellants' entire argument on this point is a discussion of the evidence that they contend shows that Amy breached her duties as trustee and acted in bad faith. Examples include failing to provide accountings to the beneficiaries and commingling her individual assets with trust assets. The only evidence they cite pertaining to damages was a loss of hay sales in the gross amount of $21,000 because Amy allegedly locked a gate blocking access to the fields.

By failing to discuss the evidence that they claim supports an award of damages for Amy's alleged breach of the trust, appellants have failed to make a convincing argument for reversal on this point. *See Wilson v. Wilson*, 2016 Ark. App. 191, at 10, 487 S.W.3d 420, 426–27. It is well settled that we will not consider assignments of error that are unsupported by convincing argument or sufficient legal authority. *Pilcher v. Suttle Equip. Co.*, 365 Ark.

1, 6, 223 S.W.3d 789, 793 (2006). We will not do appellants' research for them. *Id.* Therefore, we do not address the merits of this argument. *Id.*

Finally, in their sixth point, appellants assert that the circuit court's final distribution of the trust assets and the award of trustee's fees and attorney's fees to Amy are clearly erroneous. They argue that Amy, Teresa, and Lance should have been required to pay the trust for the items they purchased at the auction and that some of the attorney's fees Amy sought were for her personal interests. Appellants contend that if the trust were repaid, there would be funds to distribute to the beneficiaries. They further argue that this would be true even if Amy were awarded all the claimed trustee's fees and attorney's fees.

While we conduct a de novo review on the record of matters that sound in equity, we will not reverse a finding by a circuit court in an equity case unless it is clearly erroneous. *Fisher*, *supra*. A finding is clearly erroneous when, even though there is some evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id.* At trial, Amy testified that she owed $24,975 for items purchased at the April 2017 auction; Lance owed $19,559; and Teresa owed approximately $1,150. These sums, together with a bank account having a balance of $24,964.70, represented the trust's total liquid assets of $70,647. Amy testified that if the sums were collected from herself, Teresa, and Lance, each beneficiary would receive approximately $23,550 before adjustments for expenses were made. According to Amy and her exhibit, after adjustments, she would receive approximately $5,800; Teresa would receive approximately $16,000; and Lance would receive approximately $3,200. By focusing only on the debts owed to the trust and the bank account, appellants ignore a key fact—that under the trust, Amy was to receive all

bank accounts. We are not left with a definite and firm conviction that a mistake has been made here.

Moreover, there was also testimony that other personal property had been delivered to Teresa and the other beneficiaries. Teresa disputed that all such property had been delivered to her. There were no values placed on these other items. The circuit court considered the equities of the situation, such as the expense of further litigation, and concluded that it would be more equitable to all parties to end the litigation by allowing each party to keep the property in his or her possession free from any debt that may be owed to the trust. We cannot say that the circuit court clearly erred in its conclusion that this was an equitable resolution of the trust.

As for the attorney's fees, we review the circuit court's decision to award attorney's fees for an abuse of discretion. *In re Hamilton Living Tr.*, 2015 Ark. 367, at 8, 471 S.W.3d 203, 209. A circuit court hearing a trust case can award attorney's fees simply on the equities of the case. Ark. Code Ann. § 28-73-1004 (Repl. 2012). There is nothing to indicate that the court failed to consider that some of the fees were incurred for Amy's personal interest or that it made the award without due consideration. Thus, the court's fee award was not an abuse of its discretion. *Hamilton Living Tr.*, *supra*.

Affirmed.

BARRETT and VAUGHT, JJ., agree.

*Tamra Cochran, P.A.*, by: *Tamra Cochran*, for appellants.

*Smith, Cohen & Horan, PLC*, by; *Matthew T. Horan*; and *Everett Law Firm*, by: *John C. Everett*, for appellee.