N. MARK KLAPPENBACH, Judge
This case concerns the interest of the estate of Wanda Boling-Fisher in her grandfather's trust. In summary, Wanda and her brother Eric Boling had evenly divided an annual income distribution generated by the trust. The trust would not be terminated and the assets distributed until certain contingencies had occurred; Wanda died before those contingencies occurred. Wanda had no children but was married, and her widower became the administrator of her estate. Eric asserted that the trust's terms dictated that Wanda's interest reverted to him (Eric) because he was the sole remaining child of their father and the intended beneficiary. Wanda's estate asserted that her interest had vested during her lifetime and became an asset of her estate. The Mississippi County Circuit Court considered cross-motions for summary judgment, entered an order in Eric's favor, and Wanda's estate appeals. We affirm as modified.
Our standard of review is well settled, as are the general principles of law used to construe trusts. The courts of equity have exclusive jurisdiction in cases involving matters of the construction, interpretation, and operation of trusts. Roberson v. Roberson , 2018 Ark. App. 423, 561 S.W.3d 737. We conduct a de novo review on the record of matters that sound in equity and will not reverse a finding by a circuit court in an equity case unless it is clearly erroneous. Id. A finding is clearly erroneous when, even though there is some evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. Id. A court construing a trust applies the same rules applicable to the construction of a will, and the paramount principle in the interpretation of wills is that the intention of the testator, or trust settlor, governs. Id. The settlor's intention is to be determined from viewing the four corners of the instrument considering the language used and giving meaning to all its provisions whenever possible. Id. Further, the court should give force to each clause of the trust, and only when there is irreconcilable conflict between two clauses must one give way to the other. Id. The court may read the language used by the settlor in light of the circumstances existing when the trust was written but only if there is uncertainty about the settlor's intentions from looking at the language used in the trust. Id. When the purpose of a trust is ascertained, that purpose will take precedence over all other canons of construction. Wisener v. Burns , 345 Ark. 84, 44 S.W.3d 289 (2001) ; Carmody v. Betts , 104 Ark. App. 84, 289 S.W.3d 174 (2008).
Ordinarily, on appeal from a summary-judgment disposition, we view the evidence in the light most favorable to *595 the party resisting the motion, and any doubts and inferences are resolved against the moving party. Mississippi Cty. v. City of Blytheville , 2018 Ark. 50, 538 S.W.3d 822. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. Id. When parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no material facts remaining and that summary judgment is an appropriate means of resolving the case. Id. As to issues of law presented, our review is de novo. Id.
The facts leading to this litigation are these. In 1967, H.E. Boling, the grandfather of Wanda and Eric, executed a will that included a residuary trust. H.E. died in 1977, and his wife Eunice was the recipient of the annual income distribution of the trust until her death in 1999. Thereafter, the yearly distributions from the trust were directed to be given 75 percent to their son Charles and 25 percent to Eunice's daughter Wilma.[1] Charles died in 2001; thereafter, his 75 percent distribution was evenly divided between his two then-adult children, Wanda and Eric. Wanda died in 2014.
In 2015, Eric petitioned the circuit court to construe their grandfather's will and the residuary trust, contending that the trust's terms directed Eric to be the recipient of the entire 75% income distribution, and seeking an order directing the trustee to distribute his portion of the corpus of the trust because Wanda died before the trust had terminated. Wanda's estate contended that when she died, her interest became an asset of her estate. Both sides filed motions for summary judgment.
The circuit court considered the terms of H.E.'s 1967 trust, which reads in pertinent part:
Section 2. This Residuary Trust is for the benefit of my wife, Eunice Boling; of our son, Charles Fred Boling and of his two children, Wanda Fay Boling, age 5, and Eric Ray Boling, age 2; and my wife's daughter, Wilma Leola East and of her two children, David Michael East, age 10, and Lisa Annette East, age 7.
Section 3. The Residuary Trust will be operated for their benefit during the periods stated. At the end of each year of the operation of this Trust, the Trustee shall determine the net income of the Trust, after he has paid all current obligations.... In other words, the Trustee in his sole discretion shall decide if any income is available to be distributed to the beneficiaries of this Trust for each year of the operation of the Trust. ....
....
Section 4. During the lifetime of my wife, Eunice Boling, the trustee shall pay all income which is distributed annually to my wife, Eunice Boling, and upon her death, it will be distributed as follows: 75% of the income to my son, Charles Fred Boling, and 25% to my step-daughter, Wilma Leola East. The Trustee shall divide the Trust property into two portions, 75% in one portion and 25% in the other portion. This division may consist of undivided interest in the land and may also be operated jointly with each other.
Section 5. After my wife's death, and after the death of both Charles Fred Boling and Wilma Leola East, and after the four grandchildren have all become 21 years of age, the Trustee shall terminate the Trusts. In such event the property in the Charles Fred Boling Trust shall be divided and delivered to his children share and share alike, per stirpes. The property in the Wilma Leola *596 East Trust shall also be distributed to her children, per stirpes.
Section 6. In any event, after the death of my wife and after the death of either my son, Charles Fred Boling, or my step-daughter, Wilma Leola East, or both of them, the Trustee shall operate and manage the Trust for the benefit of the children or descendants of my son Charles and my step-daughter Wilma with each Trust being a separate Trust as follows:
(a) While any child of Charles and/or Wilma is under the age of twenty-one years, the Trustee shall use so much of the income of his fund for his reasonable support, comfort and education as the Trustee determines to be required for those purposes. After he attains that age, the Trustee shall pay all the current net income of his fund to him.
(b) Notwithstanding anything in this instrument to the contrary, if any descendant of a deceased child of Charles and/or Wilma is under the age of twenty-one years when the Trustee is directed to distribute to him any portion of the principal of the Trust property, his portion shall immediately vest in the interest in him indefeasibly, but the Trustee may in its discretion withhold possession of it and hold it in trust for his benefit until he attains that age. In the meantime, the Trustee shall use so much of the income and principal for his reasonable support, comfort and education as the Trustee determines to be required for those purposes.
(c) If at any time before these Trusts for Charles' and/or Wilma's children terminate, all other children die and leave no descendants surviving, the Trusts or Trust automatically terminate and title to all such Trust property shall vest at that time in my heirs at law according to laws of descent and distribution in Arkansas relating to non-ancestral real property. (Sec. 61-101 et. seq. Ark. Stats. 1947 Amended.)
Eric pointed out that Wilma was still living, so under the terms of Section 5, the trust was not yet at the point of termination. Eric recited what he considered to be H.E.'s unambiguous intent expressed in Section 2 that he established this trust to benefit very specific individuals: his wife Eunice, his son Charles and "his two children" Wanda and Eric, and his stepdaughter Wilma and her two children. Eric reasoned that this trust was operating to provide income and ultimately assets that were to be distributed only to Charles's and Wilma's direct descendants. Eric asserted that because Wanda died without having had any children, at that point he was Charles's only remaining child or descendant; thus, Wanda's interest reverted back to him. In contrast, Wanda's estate argued that her interest in her grandfather's trust vested when her grandfather died, she began to receive her interest in the 75 percent following her father's death, and nothing in the trust language required that she be alive to continue to be entitled to her portion as one of Charles's children. Thus, Wanda's estate argued that it should continue to receive Wanda's income distribution and be given her part when the trust terminates.
The circuit court relied on the wording of the trust and found in favor of Eric. On appeal, Wanda's estate argues that Wanda's interest vested when her grandfather died, that Arkansas's statute on lapses of testamentary provisions, Ark. Code Ann. § 28-26-104 (Repl. 2012), does not apply, and that proper interpretation of the trust requires a finding that Wanda's portion of the trust is now an asset of her estate. Distilled to its essence, Wanda's estate argues that Wanda was not required to live until the termination of the trust in *597 order for her interest to continue. Eric contends that the circuit court properly construed the terms of their grandfather's trust and gave effect to his intention to provide for Charles's living direct descendants.
Where the language of a will expressly states the testator's intention, the intent must be gathered from the four corners of the instrument. Covenant Presbytery v. First Baptist Church , 2016 Ark. 138, 489 S.W.3d 153. Wanda's estate presents a multitude of cases from other states in support of its contention that Wanda's interest passed to her estate from and after her death. However, sheer numbers of decisions of other jurisdictions one way or the other on any given question are, of course, not controlling on our appellate courts. See Chamberlin v. State Farm Mut. Auto. Ins. Co. , 343 Ark. 392, 36 S.W.3d 281 (2001). Wanda's estate also cites numerous Arkansas cases to support its contention that Wanda's interest "vested" when her grandfather died and therefore necessarily passed to her estate. We agree that the trust's terms were triggered when H.E. died, but true "vesting" was not the proper terminology.[2]
The plain language of this trust evinces H.E.'s intent, and it is the settlor's intent to which courts are to give effect. Section 6 of this residuary trust makes clear that H.E. intended that after his son Charles died, his 75 percent interest was to be managed "for the benefit of the children or the descendants of my son Charles." Wanda, who was specifically named as one of Charles's children in the trust, was a proper and intended recipient of the income generated by the trust from the time her father died and until she died. When Wanda died, there remained only one child or descendant of Charles, and that was Eric.
Nowhere in the trust document does H.E. direct that any income or corpus be distributed to a beneficiary of the estate of a distributee, as Wanda's estate argues. For example, in Section 6(b), H.E. refers to "any descendant of a deceased child of Charles and/or Wilma" for purposes of distributing income and principal to any such descendant under the age of twenty-one. Likewise, the termination of this trust as contemplated by Section 5 requires that the distributees of Charles's portion of the corpus be distributed to "his children share and share alike, per stirpes" meaning those who are living at the termination of the trust, which would exclude Wanda and the distributees of her estate. At present, Section 5 is poised to be triggered in the event of Wilma's death, which creates a timing issue for true "vesting" in the corpus. Reading these trust provisions in their entirety, it is abundantly clear that H.E.'s overriding intent was to establish an income stream to provide for the needs of direct descendants during their lifetimes and to ultimately distribute the assets to his then living direct descendants. By reaching this conclusion, we hold that neither Wanda nor her estate and distributees ever vested according to the terms of this trust.
*598 The circuit court was not wrong in denying the motion for summary judgment filed by Wanda's estate, nor was it wrong to dismiss the complaint in intervention, the third-party complaint seeking a declaratory judgment, and all other actions for relief filed by Wanda's estate. The circuit court's use of the words "vested" and "vesting" in Eric at Wanda's death, however, was perhaps ambiguous. We hold that because Wanda died without leaving a descendant, her portion of the interest in the trust she was receiving transferred to Eric and will continue to be paid to Eric or his children until such time as Wilma dies, at which time the interest and corpus will be distributed to Eric or his living descendants or their heirs pursuant to the trust's terms.
Consequently, the order of the circuit court granting summary judgment to Eric, which gave effect to H.E.'s intentions, is affirmed as modified.
Affirmed as modified.
Gruber, C.J., and Abramson, Virden, and Hixson, JJ., agree.
Harrison, J., dissents.

Wilma's interest in H.E.'s trust is not at issue on appeal.

The circuit court's order erroneously states that at Wanda's death, her portion "vested" in Eric. Appellee acknowledged at oral argument that using this terminology was less than artful. Notwithstanding the circuit court's mistaken terminology, we affirm the circuit court's order because the circuit court reached the right result even though it announced the wrong reason. The appellate court is not constrained by the circuit court's rationale but may review the record for additional reasons to affirm. See Vowell v. Fairfield Bay Cmty. Club, Inc. , 346 Ark. 270, 58 S.W.3d 324 (2001) ; Jones v. Abraham , 341 Ark. 66, 73, 15 S.W.3d 310, 315 (2000) (overruled on other grounds by Lamontagne v. Ark. Dep't of Human Servs., 2010 Ark. 190, 366 S.W.3d 351 ).