Cite as 2021 Ark. App. 109

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II

No. CV-18-922

| | |
|---|---|
| KENNETH J. CLARK, AS TRUSTEE OF THE CLARK REVOCABLE TRUST U/D/T JULY 23, 1997 APPELLANT | Opinion Delivered: March 10, 2021 |
| | APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. 08ECV-15-34] |
| V. | |
| MELVA JEAN SUMMERS APPELLEE | HONORABLE SCOTT JACKSON, JUDGE |
| | REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

This trust case returns to us after we dismissed a previous appeal for lack of a final order. *See Clark v. Summers*, 2018 Ark. App. 225, 547 S.W.3d 511 (*Clark I*). Kenneth J. Clark (Kenny) appeals the Carroll County Circuit Court's orders that valued the trust's interest in two tracts of land and, on the basis of those valuations, ordered an equal distribution of the trust assets to the beneficiaries. He contends that his valuations of those assets complied with the discretion given him under the trust. We agree in part and reverse and remand for further proceedings consistent with this opinion.

Kenny and his wife, Peggy, originally acquired a 360-acre tract of land in 1971. In 1972, they conveyed a one-half interest in that property to Kenny's parents, Kenneth B. Clark and Melva Clark, as tenants in common. (For purposes of this opinion, any reference to "parcel 1" refers to the trust's one-half interest in the 360 acres.) Apparently, Kenneth

B. Clark and Melva Clark helped Kenny with the financing and payments on the land. Kenny and his father farmed the property for over thirty-five years, sharing equally expenses and profits.

In 1997, Kenneth B. Clark and Melva Clark executed a trust and named their four children, Kenny, appellee Melva Jean Summers, Cora A. Clark, and Barbara R. McClenathan, as beneficiaries. The trust named Kenny as the successor trustee upon the death of both parents and Cora A. Clark as the next successor trustee in the event Kenny could not serve. Kenneth B. Clark and Melva Clark conveyed their interest in parcel 1 and a separate 100–acre tract of land they owned outright (parcel 2) to the trust. The value of these two parcels is the crux of the parties' dispute.

In July 2007, Kenneth B. Clark and Melva Clark attempted to convey their interest in parcel 1 back to Kenny by a quitclaim deed; however, the deed was in their names individually, and not as trustees. Therefore, the deed failed to convey any interest.

In 2012 Melva Clark died, and pursuant to the language of the trust, her share of parcel 1 was transferred into the surviving grantor's "survivor's trust." In December 2012, Kenny and his father drew up a "Real Estate Agreement." It states the following in pertinent part: "It is agreed . . . that the value of [parcel 1] . . . shall be set at $1,000 per acre. This value being placed at the time of transfer of full ownership to [Kenny] and Peggy A. Clark. There being a total of 360 acres of which ½ interest shall be considered in determining inheritance valuation upon the death of either party." Essentially, the Real Estate Agreement valued the trust's interest in parcel 1 at $180,000. It is worth noting that the agreed-upon

valuation in the Real Estate Agreement was reciprocal as to each party regardless of whether Kenneth B. died first, or Kenny died first.

In 2013, Kenneth B. Clark passed away, and Kenny was appointed successor trustee. In his role as trustee, Kenny distributed the trust's one-half interest in parcel 1 to himself and his wife by trustee's deed. Kenny subsequently decided to purchase parcel 2 from the trust as well, and he had it appraised twice. The value of parcel 2 was estimated to be $240,000, the higher of the two appraisals. Kenny, as trustee, sold the parcel to himself and would deposit the $240,000 sales price into the trust. During the management of the trust, Kenny, as trustee, made several distributions to beneficiaries.

Summers filed a petition for declaratory judgment in which she alleged that Kenny undervalued both parcels, resulting in distribution of a larger portion of the trust assets to himself. Summers requested that the circuit court order a new appraisal of parcel 1 by a mutually agreed-upon appraiser, that the court order Kenny to repay the trust for the unequal distribution of assets from the sale of parcel 1 to himself, that the court cancel the sale of parcel 2 and refund Kenny his money, and that the court require Kenny to distribute the trust property equally to all four beneficiaries. She also sought attorney's fees.

On April 7, 2017, after a hearing in which the parties presented evidence regarding the value of the land[1] and argument regarding the language of the trust, the circuit court entered an order. The court found that the intent of the trust was to equally divide the assets

---

[1]In addition to other evidence introduced at trial, Summers introduced her own appraisals for parcel 1 and parcel 2. The appraisal for parcel 1 estimated the market value for the one-half interest at $422,500. The appraisal for parcel 2 estimated the market value at $360,000.

of the trust to the grantors' four children. The court found that it was impossible to determine the value of the parcels from the testimony, and it ordered new appraisals performed by an agreed-upon appraiser. With respect to parcel 1, the court found that Kenny's use of the Real Estate Agreement to determine the value of parcel 1 "violates the responsibility [Kenny] owes to the other beneficiaries." And with respect to parcel 2, the court found Kenny did not act improperly; however, because of the range of the appraisals, the court could not determine the true value of the parcel.

When Kenny attempted to appeal from the April 2017 order, we dismissed the appeal and held that the order lacked finality because the value of the two parcels of land was still unknown, and the value of each beneficiary's share was also unknown. *Clark I*, 2018 Ark. App. 225, at 5, 547 S.W.3d at 514.

On remand, the court held a hearing during which the parties stipulated to the admission of two appraisals by Rick Mahan. The first appraisal, dated September 18, 2017, estimated the market value of parcel 1 and parcel 2 as of the death of the last grantor in 2013. Mahan valued parcel 2 at $390,000. Mahan valued the entire 360-acre tract at $1 million. He did not separately value the trust's interest. The second appraisal, dated June 12, 2018, estimated the market value of the trust's interest in parcel 1 at $410,000. He again valued the entire 360 acres at $1 million.[2]

On July 25, 2018, the circuit court entered an order finding the value of parcel 1 was $410,000, and parcel 2 was valued at $390,000. The court ordered "[d]istribution of

---

[2]Mahan explained that a one-half interest in the property was valued at $410,000 instead of $500,000 due to various market conditions and the application of a discount.

4

these assets to [Kenny] shall be at these values and total distributions to the remaining Trust beneficiaries based thereon in accordance with Paragraph 3 of the [April 2017] Order."[3] The court also awarded Summers $38,000 in attorney's fees from the trust and confirmed all other findings from its April 2017 order. This appeal followed.

Kenny argues three points on appeal: (1) the circuit court erred by finding that Kenny "breached the trust" when he valued the trust's interest in parcel 1 at $180,000 and then finding the value to be $410,000; (2) the circuit court erred when it ordered Kenny to distribute parcel 2 to himself and to distribute $390,000 among the remaining trust beneficiaries; and (3) if the case is reversed, the award of attorney's fees should also be reversed.

The courts of equity have exclusive jurisdiction in cases involving matters of the construction, interpretation, and operation of trusts. *Fisher v. Boling*, 2019 Ark. App. 225, 575 S.W.3d 592. We conduct a de novo review on the record of matters that sound in equity and will not reverse a finding by a circuit court in an equity case unless it is clearly erroneous. *Id*. A finding is clearly erroneous when, even though there is some evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id*.

---

[3]Paragraph 3 of the April 2017 order provided, in pertinent part:

> Under the terms of the Trust, Kenny Clark was to receive [parcel 2] and to receive the ½ interest in [parcel 1]. The other three children were to receive other Trust assets of an equal value.

For his first point, Kenny argues that the court erred in finding that he "breached the trust" when he valued the trust's one-half interest in the 360-acre tract for $180,000 and by revaluing the property for $410,000. Specifically, he contends that he complied with the terms of the trust when he valued that one-half interest at $180,000 because the trust vested him with broad discretion in his role as trustee and declared that "the judgment of the Trustee concerning the valuation of assets distributed shall be binding and conclusive upon all Beneficiaries." He contends that he complied with the terms of the trust when he valued this parcel and that he acted reasonably in relying on a written valuation that he received from the surviving grantor. Appellee Summers argues that the circuit court acted within its authority to revalue the trust assets and that its decision was supported by the evidence.

In its ruling, the circuit court relied on Article V, section 5.3 D[4] of the trust for its finding that the intent of the settlors was to "make equal gifts to their children." However, in doing so, the court overlooked other stated intentions in the trust instrument thereby ignoring or diminishing other provisions that guide our determination. Instead, we believe that the purpose of the trust is threefold: (1) management of the assets during the grantors lives and for estate purposes at their deaths; (2) to give Kenny, as successor trustee, the

---

[4]That provision reads as follows:

> The Trustee shall determine the value of the property [parcel 1] being distributed to KENNETH JAY CLARK and PEGGY CLARK as set forth in paragraph C above. The Trustee shall then pay an equal sum to MELVA JEAN SUMMERS, CORA A. CLARK, and BARBARA R. McCLENATHAN. Any remaining assets shall be divided into four (4) equal shares and distributed in equal shares to each of the four (4) children per stirpes. It is the intention of the Grantors to make equal gifts to their children except that Kenneth Jay Clark is to receive specific property.

discretion to manage the trust assets limited only in that he must act in good faith, and finally

(3) equal distribution of the assets.

The goal of the management of assets is clear from the plain language of the trust.

Article XXI sets forth:

> The purpose of this Trust, among others, is to *provide for the management of each Grantor's assets*, both presently and during any future period of disability; a preferred alternative to guardianship proceedings; and a simplified means of accomplishing both lifetime and death transfers of those assets.

Article VII, section 7.1Y gives the trustee very broad powers to manage the assets:

> In making the distributions to any trust or share created under this agreement, the judgment of the trustee concerning the valuation of assets distributed *shall be binding and conclusive upon all beneficiaries*. The trustee may distribute the shares to the various trusts or to beneficiaries by making distribution in cash, or in kind, or partly in cash and partly in kind, or an undivided interest, *in such manner as the trustee, in its sole and absolute discretion deems advisable*.

Article XIII, section 13.5 again provides that the trustee's discretion is unassailable, short of

a lack of good faith in exercising that discretion.

> Wherever the judgment or discretion of any trustee may be exercised, it *shall be final and binding upon every person interested in the trust estate. Any trustee exercising any discretionary power relating to the distribution or accumulation of principle or income, or to the termination of the trust, shall be responsible only for lack of good faith in the exercise of such power.*

(All emphasis added.)

As further evidence of the discretion vested in the trustee, the trust contained a penal

provision for any beneficiary that sought to challenge it. That provision, Article V, section

5.1, provides in pertinent part that

> [a]ny person who would otherwise be or become a beneficiary of any part of any trust which is established by the Grantor(s) by reason of the provisions anywhere in this instrument herein contained, which person shall in anywise try to or succeed in

7

contesting this trust, the validity thereof, or any provision herein contained with respect to the distribution of any share hereof, shall be limited to a total sum of $1.00.

Despite Kenny's request that the circuit court enforce this section, the court did not find this provision applicable to the suit brought by Summers, and that ruling has not been appealed. Nonetheless, it is instructive as to the intent of the settlors that the beneficiaries refrain from challenging the distribution of shares.

The cardinal rule in construing a trust is that the intention of the settlor must be ascertained. *Dawson v. Stoner-Sellers*, 2019 Ark. 410, 591 S.W.3d 299. When the terms of a trust are unambiguous, it is the court's duty to construe the written instrument according to the plain meaning of the language employed. *Id*. An ambiguity has been defined as an indistinctness or uncertainty of meaning of an expression used in a written instrument. *Id*.

A court construing a trust applies the same rules applicable to the construction of a will, and the paramount principle in the interpretation of wills is that the intention of the testator, or trust settlor, governs. *Fisher, supra*. The settlor's intention is to be determined from viewing the four corners of the instrument considering the language used and giving meaning to all its provisions whenever possible. *Id*. Further, the court should give force to each clause of the trust, and only when there is irreconcilable conflict between two clauses must one give way to the other. *Id*. The court may read the language used by the settlor in light of the circumstances existing when the trust was written but only if there is uncertainty about the settlor's intentions from looking at the language used in the trust. *Id*. When the purpose of a trust is ascertained, that purpose will take precedence over all other canons of construction. *Id*.

To determine whether Kenny carried out the intentions of the settlors, we must analyze parcel 1 and parcel 2 separately. The disposition of parcel 1 was a *distribution to a beneficiary* while the disposition of parcel 2 was a *sale of a trust asset*. These two separate dispositions require us to analyze different provisions in the trust instrument.

Reading the provisions of the trust in harmony and relying on the value the trustee assigned to the property using the discretion expressly given to him under the trust, we hold that Kenny's valuation of parcel 1 was proper. That same value was required to be distributed equally to each of the other three beneficiaries as required by the terms of the trust.

As discussed above, the settlors directed its original trustees and successor trustees, including Kenny or Cora A. Clark, to "determine the value" of parcel 1. Nowhere in the trust instrument can one find any reference to "appraisal" or "fair market value." The trust gave absolute and conclusive power to the trustees to make the valuation, and the only limit placed on that power is "lack of good faith." Before the circuit court can abrogate and nullify the trustee's discretionary decisions and order new valuations of parcel 1, the court must first make the threshold finding that Kenny, as successor trustee, did not exercise good faith in the exercise of his discretionary powers. However, the court did not find a lack of good faith. Instead, the circuit court's April 7, 2017 order, which discusses Kenny's discretionary valuation of parcel 1, simply states: "When considering plaintiff's appraisal evidence presented, *the* [Real Estate Agreement] *document violates* the responsibility [Kenny], Successor Trustee, owes to the other beneficiaries." (Emphasis added.)

9

Kenny introduced evidence that supported his good faith and reliance on the Real Estate Agreement to establish a value on the one-half interest in the 360 acres, as determined by the settlors:

1. Kenny and his father used the $1,000/acre value for tax purposes in previous years.

2. Melva, his mother, used the $1,000/acre value for her estate purposes.

3. In 2007 when the ineffective quitclaim deed was executed, Kenny testified that his parents and he valued the parcel at $1,000/acre.

4. In 2012, after his mother died, Kenny and Kenneth B. valued parcel 1 at $1,000/acre in the Real Estate Agreement for purposes of "determining inheritance valuation on the death of either party." It should not be overlooked that this value was agreed for "the death of either party." So, if Kenny had predeceased Kenneth B., the value of parcel 1 for Kenny's estate would also have been $1,000/acre. In this circumstance, if Kenneth B. wanted to buy out Peggy's one-half interest, he would have paid her $1,000/acre.

In light of the express terms of the trust, Kenny, as the successor trustee, was granted discretion to place a value on the one-half interest the trust owned in Parcel 1. There is no evidence in the record—and no finding by the circuit court—that Kenny assigned this value with a lack of good faith. As such, the circuit court erred in finding that Kenny's use of the Real Estate Agreement to determine the value of parcel 1 violates the responsibility he owes to the other beneficiaries. Kenny, as successor trustee, properly exercised his discretion, and the value of the trust's interest in parcel 1 is $180,000. However, that does not end our analysis of the consequences of this value regarding parcel 1.

The evidence in the record before us is unclear as to how and if the value of parcel 1 was distributed to the other beneficiaries. According to the plain language of the trust, Kenny was to receive parcel 1 and not a share in the proceeds. Instead, he, as trustee was to

10

pay an equal sum—$180,000—to each of his sisters from the trust. We believe the trust language is clear as stated in Article VII, section 5.3.D. Such a distribution based on the $180,000 valuation of the trust's interest in parcel 1 would, in fact, be equal to all beneficiaries.

That section of the trust goes on to direct that after those three payments are made, then the rest, residue, and remainder of the trust assets shall be divided into four equal shares and distributed to each of the four children. Therefore, after parcel 1 was distributed to Kenny, the trustee was required to pay an equal sum of $180,000 to each of the other three siblings before the rest, residue, and remainder of the trust was distributed.

One clause of the trust discussed by the circuit court and our colleagues in the dissent gave us pause. Article VIII states that

> notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to Trustee generally pursuant to law shall be construed to enable the Trustee . . . to purchase, exchange, or otherwise deal with or dispose of all or any part of the principal or income of this Trust for less than an adequate consideration in money or money's worth.

The circuit court found that the valuation Kenny placed on parcel 1 violated this provision. We disagree and hold that the circuit court erred when it applied Article VIII because it is not applicable to *distributions* of the property to beneficiaries. Simply put, beneficiaries do not pay for the property that is distributed to them.

The Clark Revocable Trust lists several distributions that must be made to the trust beneficiaries. The provisions of the trust that list and describe these distributions include instructions for valuing the trust property when necessary. None of these distributions require "adequate consideration in money or money's worth." Reading the trust instrument

11

as a whole, Article VIII is simply inapplicable to *distributions* of trust property. As Kenny

points out, to hold otherwise would make no sense. If a beneficiary had to pay money for

a distribution, the trust would never end.

We remand this issue to the circuit court for proceedings consistent with this

opinion.

As stated earlier, the analysis of parcel 2 involves the interpretation of other provisions

in the trust. Kenny simply purchased a trust asset, parcel 2, for a purchase price of $240,000

to be deposited into the trust. Although the court found that Kenny's dual role as a

beneficiary and trustee "are in conflict with one another," the court was in error. It is

permissible for a sole trustee to also be one of several beneficiaries of a trust, even though

conflicts of interest and coincidental benefits to that trustee-beneficiary result. *Clement v.*

*Larkey*, 314 Ark. 489, 863 S.W.2d 580 (1993).

Even though Kenny's purchase of parcel 2 was not a conflict of interest, the purchase

does bring into play Articles VII and VIII of the trust, which discuss the sale of trust assets

in the administration of the trust. Article VII, section 7.1(y) grants the authority to sell trust

property:

> In making the distributions to any Trust or share created under this
> agreement, the judgment of the Trustee concerning the valuation of assets distributed
> shall be binding and conclusive upon all Beneficiaries. The Trustee may distribute
> the shares to the various Trusts or to Beneficiaries by making distributions in kind,
> or in undivided interests, in such manner as the Trustee, in its sole and absolute
> discretion seems advisable. *The Trustee may sell such property as it deems necessary to make*
> *any such division or distribution. . . .*

In his argument regarding parcel 2, Kenny asserts that the circuit court clearly erred

when it ordered him to "distribute" parcel 2 to himself and then make distributions based

on the court-ordered appraisal to each of the remaining three beneficiaries. Here, we would first point out a factual error in the court's April 2017 order. The court found that under the terms of the trust, Kenny was to receive both parcel 2 and parcel 1 as specific bequests. This is not correct. Under Article V, section 5.3(C) of the trust, the successor trustee (Kenny) is directed to distribute *parcel 1* to himself. The trust is silent as to any distribution of parcel 2, and it is thus treated as any other trust asset.

As stated above, the trust authorized Kenny to purchase parcel 2, which he did, pursuant to Article VII, section 7.1(y). However, a trustee's purchase of trust assets is limited by the adequate-consideration provision of Article VIII.

The circuit court found that Kenny obtained two appraisals to determine the value of parcel 2 and that Summers also obtained appraisals on the land. Those appraisals ranged in value from $235,000 to $450,000. Kenny purchased parcel 2 for $240,000. While the court did not specifically point to Article VIII or use the phrase "adequate consideration," in our de novo review, it is clear from the language used in the court's order that the court was concerned with the consideration for parcel 2 due to the wide range of appraised values. Because of the disparities in the appraisals, the court found "that the true value of the tract of land is uncertain and difficult for this court to rule in such a way to carry out the primary intent of the Grantors." Accordingly, the court ordered a new appraisal of the parcel.

Summers's original request was that the sale of parcel 2 be set aside for lack of adequate consideration. It is clear the circuit court agreed that the consideration was inadequate, but rather than setting aside the sale as Summers requested, the court directed Kenny and Summers to have the land reappraised, a remedy neither party requested. Since

the court found the sale was not for adequate consideration, it should have granted Summers's request and set aside the sale of parcel 2, which would then have remained in the trust. As per the clear directions in section 5.3 D: "Any remaining assets shall be divided into four (4) equal shares and distributed in equal shares to each of the four (4) children per stirpes." Thus, the proper result would be that the beneficiaries each have a one-fourth interest in the one hundred acres. What happens with those interests is up to them. The "value" of parcel 2, or each beneficiary's share, will be determined by the marketplace. If, as stated in the record, Kenny paid the trust $240,000, that sum would be returned to him short of some sort of agreement among the beneficiaries. We reverse and remand this issue to the circuit court for proceedings consistent with this opinion.

Finally, Kenny argues that, should the underlying judgment be reversed, the award of attorney's fees should also be reversed. We agree.

Summers sought fees under both Arkansas Code Annotated section 16-22-308 (Repl. 2012) and section 28-73-1004 (Repl. 2012), part of the trust code. Although the circuit court never specified the basis of the award of $38,000 in fees in the written order, it explained the amount from the bench:

> The plaintiff had to bring the lawsuit, which benefited the beneficiaries in the amount of $380,000. I will find the suit was necessary to protect her interests. I'll award ten percent attorney's fees for the recovered amount. The amount will be $38,000.

The court based its award on 10 percent of the amount "recovered" for the beneficiaries, indicating that it was relying on section 16-22-308. We have held that section 16-22-308 and its requirement of a "prevailing party" is inapplicable in actions involving trusts. *Reed*

*v. Smith*, 2018 Ark. App. 313, 551 S.W.3d 407; *Liberty Bank of Ark. v. Byrd*, 2016 Ark. App. 86, 482 S.W.3d 746. Accordingly, we reverse on this point as well.

In conclusion, we reverse the circuit court's finding that the value of parcel 1 was $410,000 and hold that the value of parcel 1 was $180,000, and that amount is due from the trust to each of the three sisters. We find no error in the circuit court's holding that Kenny did not pay adequate consideration for parcel 2 but reverse with instructions that the sale be set aside, any purchase money be refunded, and the 100 acres of parcel 2 becomes part of the trust estate to be divided equally among the beneficiaries. We reverse the circuit court's award of attorney's fees. We remand this case to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

GLADWIN, HIXSON, and MURPHY, JJ., agree.

WHITEAKER, J., dissents in part.

BROWN, J., dissents.

**PHILLIP T. WHITEAKER, Judge, dissenting**. Although I agree with the majority's disposition of the second and third points on appeal in this case, I believe our standard of review should compel a decision affirming on appellant Kenneth J. Clark's first point on appeal. I therefore respectfully dissent on that issue.

Our standard of review in matters such as this is well settled. We conduct a de novo review on the record of matters that sound in equity but will not reverse a finding by a circuit court in an equity case unless it is clearly erroneous. *Fisher v. Boling*, 2019 Ark. App. 225, at 2, 575 S.W.3d 592, 594 (internal citations omitted). A finding is clearly erroneous

15

when, even though there is some evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id.*

The majority opinion is heavy on the de novo review element of our standard. In its de novo review, the majority opinion sets forth its own interpretation of what it believes the trust document was intended to mean. It is light, however, on the examination of the circuit court's findings under the clearly erroneous standard. I therefore specifically set out the court's factual findings with respect to parcel 1 and explain why I have concluded that the court was not clearly erroneous.

First, the court made a specific finding concerning the intention of the grantors. A court construing a trust applies the same rules applicable to the construction of a will, and the paramount principle in the interpretation of wills is that the intention of the testator, or trust settlor, governs. *Fisher, supra.* The settlor's intention is to be determined from viewing the four corners of the instrument considering the language used and giving meaning to all its provisions whenever possible. *Id.* Here, the court found that the grantors' intent was to make "equal gifts to their children," with the exception that Kenny would receive specific property. I conclude that this finding is not clearly erroneous since it is found in the plain language of the trust document ("It is the intention of the Grantors to make equal gifts to their children except that Kenneth Jay Clark is to receive specific property.").

Second, the court found that the "specific property" bequeathed to Kenny was parcel 1 and that the other three children were to receive other trust assets of an equal value. I again conclude that these findings are again borne out by the clear language of the trust and are not clearly erroneous.

Third, the court found that Kenny's dual roles as successor trustee and recipient of specific trust property were in conflict with each other because, as successor trustee, Kenny was in charge of valuing the specific property to determine the amount of his siblings' distribution. As the circuit court noted, "[T]he greater the value of the specific property, the less Kenneth J. Clark would receive from the residuary Trust assets." Kenny does not appear to specifically challenge this finding on appeal, and in any event, I do not believe it is clearly erroneous.

Fourth, the court concluded that the real-estate agreement between Kenny and Kenneth B. setting the value of the 360-acre tract at $1,000 per acre was an attempt to limit the value of a trust asset at a future date. In our previous opinion, this court wrote that the purpose of the real-estate agreement was "for the purpose of transferring the asset to the survivor's trust" called for by the language of the trust. *Clark v. Summers*, 2018 Ark. App. 225, at 2, 547 S.W.3d 511, 512. Thus, by our court's own previous decision, the purpose of the real-estate agreement was not for final trust-distribution purposes but was instead for estate-tax-planning purposes. I therefore cannot say that the circuit court clearly erred in rebuking Kenny's attempt to use the $1,000-per-acre valuation for distribution purposes.

Fifth, the court found that the limited valuation on the 360-acre parcel violated Article VIII of the trust. Article VIII states that states that "notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to Trustee generally pursuant to law shall be construed to enable the Trustee . . . to purchase, exchange, or *otherwise deal with* or dispose of all or any part of the principal or income of this Trust *for less*

*than an adequate consideration in money or money's worth*."[5] (Emphasis added.) The court concluded, on the basis of the appraisal evidence presented by Summers at trial, that the $180,000 valuation was not adequate consideration. As there was evidence to support this finding, I cannot conclude that it was clearly erroneous.

Finally, with respect to the 360-acre tract, the court valued that tract at $410,000 and directed Kenny to distribute the trust assets at that value "to the remaining Trust beneficiaries based thereon in accordance with Paragraph 3 of the [April 17, 2017] Order." Because of the appraisals and other evidence before the court, I cannot conclude that the court clearly erred in finding that the property should be valued at $410,000. The court did not, contrary to Kenny's arguments on appeal, direct him to make a specific dollar amount of distribution to each beneficiary. Instead, it directed him to comply with Paragraph 3 of the earlier order, which expressed the intent of the trust to "make equal gifts to their children" such that Kenny was to receive the parcel 1, and the other three children "were to receive other Trust assets of an equal value."

Because I do not believe that any of the court's factual findings with respect to the 360-acre parcel were clearly erroneous, I would affirm on Kenny's first argument on appeal.

BROWN, J., joins in part.

**WAYMOND M. BROWN, Judge, dissenting**. By its decision today, the majority has allowed a trustee to undervalue two parcels of land with an appraised value of $800,000

---

[5]In concluding that Article VIII is not applicable to distributions of the property to the beneficiaries, the majority discounts or ignores the trust's use of the broad phrase "otherwise deal with" and ignores our rule of construction that we are to give meaning to all of a trust's provisions whenever possible. *Fisher, supra.*

and to benefit from that undervaluation to the detriment of his three sisters, the other beneficiaries of the trust. Under our standard of review, I cannot conclude that the circuit court erred in ordering new appraisals of the two parcels or in its distributions of the trust's assets based on those appraisals. Because I believe that the majority has improperly substituted its view of the evidence for that of the circuit court under the guise of interpreting the trust instrument, I respectfully dissent.

I agree with Judge Whiteaker that the circuit court's findings with regard to parcel 1—the trust's one-half interest in the 360-acre tract—are not clearly erroneous. I also point out that the circuit court found that Kenneth B. Clark, one of the trust's settlors, signed the "Real Estate Agreement" setting the value of parcel 1 at $180,000 in his individual capacity, not as trustee. Kenny does not challenge this finding on appeal. This was one of the reasons the court ordered new appraisals in the first place. Moreover, we wrote in our previous opinion that the purpose of the "Real Estate Agreement" was "for the purpose of transferring the asset to the survivor's trust" called for by the language of the trust. *Clark v. Summers*, 2018 Ark. App. 225, at 2, 547 S.W.3d 511, 512. Thus, *we said* the purpose of the "Real Estate Agreement" was not for final-distribution purposes but was instead for estate-tax purposes.

The majority purports to be upholding Kenny's discretion in valuing and distributing parcel 1 to the other beneficiaries. However, I believe the majority is actually rewriting the trust instrument and deciding how much each beneficiary receives. In its comments from the bench at the hearing on remand, the circuit court explained that each of the beneficiaries was to receive $200,000—$102,500 for parcel 1 and $97,500 for their share of parcel 2—as

his or her share of the two parcels.[6] Instead, the majority appears to distribute parcel 1 to Kenny and provides that each of the other three beneficiaries receives $180,000 for her share.[7] The word "each" does not appear in Article V, section 5.3 D. If the majority is persuaded by Kenny's argument that the trust lacks sufficient assets to pay the full amounts to the beneficiaries, its decision does nothing to alleviate that concern; in fact, it increases it by increasing the amounts distributed to the beneficiaries.

Next, there are several problems with the way the majority addresses the circuit court's handling of parcel 2, not the least of which is that the majority chooses a remedy that the circuit court expressly rejected. The circuit court denied Summers's request to set aside the conveyances from Kenny as trustee to himself and his wife. Despite no clear argument from Kenny seeking that relief on appeal, the majority reverses the circuit court and sets aside the conveyance of parcel 2 to Kenny.[8] It is not the duty of this court to

---

[6]According to the circuit court, Kenny would also receive the property.

[7]I agree with the majority that Kenny does not receive any of the proceeds from parcel 1.

[8]In a footnote in his brief, Kenny states,

> Moreover, If the sale is set aside and the farm returned to the trust, then the successor trustee could distribute the farm in one of several ways. ADD. 173, 181–82. For instance, the successor trustee could partition the farm for distribution—in which case the value of the entire 100 acres would be irrelevant.

This is the only mention of setting aside the conveyance Kenny makes. Instead, his arguments concerning parcel 2 are that the circuit court erred in finding that he received parcel 2 as a distribution; that the trust instrument permitted such a sale; and that the court erred in valuing parcel 2 at $390,000 because Summers did not seek to have him pay damages.

research or develop arguments for an appellant on appeal.[9] The failure to develop a point legally or factually is reason enough to affirm the circuit court.[10]

Moreover, although Summers originally sought the relief of setting aside the conveyance of parcel 2, she did not file a notice of cross-appeal. Our case law is well settled that when an appellee seeks something more than he or she received in the lower court, a notice of cross-appeal is necessary to give us jurisdiction of the cross-appeal.[11]

As to the merits of the circuit court's actions, I believe that the circuit court reached the correct result. Courts of equity have the power to authorize and sanction trustees to deviate from the exact language of a trust in order to preserve and accomplish the intention of the settlor and purposes of the trust.[12] Whether by sale or by distribution, the result is the same—Kenny ends up with parcel 2, pays the fair market value for parcel 2 to the trust, and the other beneficiaries are distributed other trust assets of equal value. This accords with the intent of the settlors—an equal distribution among their four children.

---

[9]*Hayden v. Hayden*, 2020 Ark. App. 152, at 7, 594 S.W.3d 912, 916–17.

[10]*Id.*

[11]*Dotson v. Dotson*, 2009 Ark. App. 819, 372 S.W.3d 398.

[12]*Little Rock Univ. v. George W. Donaghey Found.*, 252 Ark. 1148, 483 S.W.2d 230 (1972); *Anderson v. Ryland*, 232 Ark. 335, 336 S.W.2d 52 (1960); Restatement (First) of Trusts § 167 (1935).

Finally, I turn to the attorney's-fees issue. As the majority notes, Summers sought fees under Arkansas Code Annotated sections 16-22-308 and 28-73-1004, part of the trust code.[13] I agree with the majority that section 16-22-308 does not apply in trust cases. Despite this, neither Kenny nor the majority separately analyzes whether the fee award is otherwise proper under section 28-73-1004. Kenny merely argues that the award should also be reversed if the judgment is reversed and cites cases in which fee awards under section 16-22-308 were reversed when the underlying judgment was reversed.

Section 28-73-1004 is an attorney's-fee statute that specifically applies in trust cases and governs over section 16-22-308.[14] A circuit court hearing a trust case can, under the plain language of section 28-73-1004, award attorney's fees to a nonprevailing party based simply on the equities of the case. Such a remedy is crucial in a case such as this where, according to the majority, the only limitation on the trustee is the trustee's good faith in the exercise of his or her unassailable discretion.

---

[13]That latter section provides:

> In a judicial proceeding involving the administration of a trust, a court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Ark. Code Ann. § 28-73-1004 (Repl. 2012).

[14]*Reed v. Smith*, 2018 Ark. App. 313, 551 S.W.3d 407; *Liberty Bank of Ark. v. Byrd*, 2016 Ark. App. 86, 482 S.W.3d 746.

We review the circuit court's decision to award attorney's fees under section 28-73-1004 for an abuse of discretion.[15] However, Kenny has not argued that the circuit court abused its discretion in making such an award. Therefore, we have no basis on which to reverse the attorney's fees.[16] Moreover, we may affirm the circuit court if it reached the right result, even though it announced a different reason.[17]

In conclusion, I turn to this court's admonition in an earlier closely divided case,

> As appellate judges, we are permitted to *review*, under appropriate standards, but not retry, cases that come before us. We do not make findings of fact. We do not determine the credibility of witnesses. Such findings and determinations are rightly made by our trial courts. Our standard of review requires that this case be affirmed.[18]

Because the majority has ignored this sound advice, I respectfully dissent.

WHITEAKER, J., joins in part.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor*, *Tasha C. Taylor*, and *Tory H. Lewis*, for appellant.

*Richard F. Hatfield, P.A.*, by: *Richard F. Hatfield*, for appellee.

---

[15] *In re Hamilton Living Tr.*, 2015 Ark. 367, 471 S.W.3d 203.

[16] *Byrd*, *supra*.

[17] *E.g.*, *Bank of the Ozarks, Inc. v. Ford Motor Co.*, 2020 Ark. App. 231, 599 S.W.3d 718.

[18] *Harrison v. Harrison*, 102 Ark. App. 131, 139, 287 S.W.3d 601, 608 (2008) (emphasis added).