Cite as 2021 Ark. App. 268

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-19-167

|  |  |
|---|---|
| ROBERT A. HALL REVOCABLE TRUST, ROBERT A. HALL, JR., TRUSTEE; DOLORES A. HALL REVOCABLE TRUST, ROBERT A. HALL, JR., TRUSTEE; ROBERT A. HALL, JR.; AND SUSANNE CAMPBELL HALL<br><br>APPELLANTS<br><br>V.<br><br>U.S. SPECIALTY INSURANCE COMPANY; CMM MECHANICAL, LLC; AMERICAN CONTRACTORS INDEMNITY COMPANY; FREDDIE CARY PARKS; AND SUSAN PARKS<br><br>APPELLEES | **Opinion Delivered** May 26, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60CV-17-6040]<br><br>HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

This is an appeal in a declaratory-judgment action decided on competing motions for summary judgment. The issue is whether a "General Indemnity Agreement" (Indemnity Agreement) dated April 4, 2014, executed by Robert A. Hall, Sr. (Hall Sr.), as trustee of the Robert A. Hall Revocable Trust (Robert Trust) and as successor trustee on behalf of the Dolores A. Hall Revocable Trust (Dolores Trust) (collectively, the trusts) is binding on the trusts. Robert A. Hall, Jr. (Hall Jr.), individually and as successor trustee of both trusts, Hall Sr.'s widow, Susanne Hall (Susanne), and both trusts are the appellants in this case. The Indemnity Agreement purported to make the trusts liable for any obligations of appellees

U.S. Specialty Insurance Co. (USSIC) and American Contractors Indemnity Co. (ACI) (collectively, the sureties) on surety bonds issued to a company in which Hall Sr. had an ownership interest, appellee CMM Mechanical, LLC (CMM). The Pulaski County Circuit Court found that Hall Sr. had authority to execute the General Indemnity Agreement in his capacity as trustee of both trusts. The court granted the sureties' motion and denied the trusts' motion. We affirm.

The following facts are largely undisputed. Hall Sr. and his first wife, Dolores Hall, created mirror estate plans in October 2000. At that time, they each created a revocable trust and a pour-over will. Both settlors retained the right to amend or revoke the trust at any time during their lifetimes. In both trust instruments, the statutory powers given to fiduciaries in Arkansas Code Annotated section 28-69-304 (Repl. 2012) were specifically incorporated. The trustee was also empowered to permit a beneficiary to use or occupy trust property without compensation. Each settlor also provided that his or her trustee would have the same power over trust property as would an absolute, single owner as long as the trustee did not breach any fiduciary responsibilities. Each trust instrument provided it was to be construed in favor of the validity of the trustee's actions. "Discretion" was defined as the "sole, exclusive, and unrestricted discretion." Each trust provided that it was not the result of any contract or agreement between the settlors.

Dolores died in April 2002. Hall Sr. became successor trustee of the Dolores Trust.

Hall Sr. prepared a First Amended and Restated Trust Agreement on October 7, 2002, along with a "Premarital Agreement." This was in anticipation of his marriage to his

2

second wife, Susanne. The trust agreement amended section 1.2 "Family" to set out his upcoming marriage to Susanne.

In section 1.5 of the Premarital Agreement, Hall Sr.'s beneficial interest in both trusts was defined as his separate property. Included was a presumption that in the event of a dispute, all property was separate property. This also included income earned by either party. "Joint property" was defined in section 1.6 as property acquired in the joint names of the parties, regardless of the source of funds. Each party was free to dispose of his or her separate property as if the marital relationship did not exist. In section 9, Hall Sr. agreed he would not modify, amend, or revoke his estate-plan documents in any way that would materially reduce the potential benefit for Susanne unless Susanne consented to that change in writing.

Hall Sr. and Susanne married on October 9, 2002.

In September 2003, Hall Sr., as successor trustee, executed the first amendment to the Dolores Trust, to be effective December 31, 2003. The amendment did not modify the trustee's powers.

In August 2009, Hall Sr. executed the first amendment to the First Amended and Restated Trust Agreement to the Robert Trust. The amendment did not modify the trustee's powers. Susanne consented to this amendment in writing.

Hall Sr. and Cary Parks founded CMM in November 2012. Each owned a 50 percent interest in CMM and Hall Sr. was to receive one-third of CMM's profits. To be successful, CMM needed the ability to obtain projects requiring a bonded contractor. Cashion Co. acted as bonding agent for CMM and the sureties ultimately issued bonds for several CMM projects.

On April 4, 2014, Hall Sr., individually and as the trustee of both trusts, executed the Indemnity Agreement guaranteeing the debts of CMM. Parks and his wife were also signatories. Both trusts were named as indemnitors.

On the same day, Hall Sr., as trustee of both trusts, executed identical documents that were styled as the second amendment to both trusts. These documents added a new section to the trustee's powers as follows:

We hereby add a new subparagraph 6.6 to said Trust to read as follows:

"6.6.R. Trustees Power to Indemnify. The trustee shall be authorized to provide an indemnification to third parties on behalf of Robert Hall with respect to guarantee and bonding for performance obligations by CMM Mechanical, LLC."

The Trust Agreement shall, in all other respects, remain in full force and effect. Susanne was not asked to consent to this amendment to the trust, and her consent was not obtained. It is also believed that this amendment was prepared by USSIC.

In January 2016, Hall Sr. executed the "Second Amended and Restated Trust Agreement" for the Robert Trust. This version restated the trustee's powers to include all common law and statutory powers set forth in Arkansas law. The amendment then sets forth several specific powers granted to the trustee, none of which specifically address the power to guarantee the debts of third parties or to execute indemnity agreements. Susanne consented to this amendment in writing.

CMM was declared in default on one of its projects in September 2016, and USSIC made demand that Hall Sr. and the trusts post collateral of approximately $172,000. One year later, in October 2017, USSIC made another demand for collateral in the amount of $450,000 after a second default by CMM.

4

Hall Sr. died in April 2017, and Hall Jr. became successor trustee of both trusts.

Appellants filed a complaint for declaratory judgment on October 25, 2017, naming USSIC and CMM as defendants. They asserted that the April 2014 amendment to each trust was invalid and sought a declaration that Hall Sr. did not have the authority to execute the Indemnity Agreement. Appellants later amended their complaint to add Cary Parks and his wife as defendants. Appellants amended their complaint a second time to add ACI as a defendant. The sureties answered, denying the material allegations.

On May 23, 2018, appellants filed a motion for summary judgment arguing that the language in the trust instruments did not authorize Hall Sr. to execute the Indemnity Agreement. On August 10, the sureties moved for summary judgment, arguing that the language in both trusts gave Hall Sr. sufficient authority to execute the Indemnity Agreement.

The circuit court heard the motions for summary judgment on October 24, 2018. Appellants argued that, after Dolores's death, her trust could be amended only to ensure that it retained its qualifying status. Appellants also contended that the April 2014 amendment to the Robert Trust was invalid because Susanne did not consent in writing to the amendment. They further argued that the court had to read the Robert Trust in connection with the Premarital Agreement because they were executed at the same time.

The sureties argued that Hall Sr., as trustee, already had sufficient powers under the trust documents to execute the Indemnity Agreement. They further argued that there was no evidence that the assets available for Susanne Hall would be reduced by Hall Sr.'s merely signing the Indemnity Agreement. According to the sureties, this was because the time to

look at whether the assets available for Susanne Hall would be reduced was at the time Hall Sr. executed the Indemnity Agreement, not later with the benefit of hindsight. The sureties also argued that the trusts' incorporation of the powers set out in Arkansas Code Annotated section 28-69-304 also allowed the trustee to execute the Indemnity Agreement. Finally, the sureties pointed out that the Premarital Agreement did not apply to the Dolores Trust, and that agreement did not address whether the trustee already had the power to execute the Indemnity Agreement.

At the conclusion of the hearing, the court ruled from the bench and granted the sureties' motion for summary judgment and denied appellants' motion. On November 2, 2018, the court entered its order memorializing its bench ruling. The order further declared that Hall Sr. had the authority as trustee or successor trustee to execute the General Indemnity Agreement in April 2014. This appeal followed.

On appeal, appellants argue that neither the trust instruments nor Arkansas Code Annotated section 28-69-304 authorized Hall Sr. to execute the General Indemnity Agreement. They further argue that the Premarital Agreement placed no restrictions on the assets available for distribution to Susanne Hall.

The courts of equity have exclusive jurisdiction in cases involving matters of the construction, interpretation, and operation of trusts. *Clark v. Summers*, 2021 Ark. App. 109, 619 S.W.3d 886; *Fisher v. Boling*, 2019 Ark. App. 225, 575 S.W.3d 592. Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *See Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. However, in a case such as this one, which does

not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether the sureties were entitled to judgment as a matter of law. *See id.*

This case involves the construction and interpretation of two trust instruments and the Premarital Agreement. The cardinal rule in construing a trust is that the intention of the settlor must be ascertained. *Clark, supra.* When the terms of a trust are unambiguous, it is the court's duty to construe the written instrument according to the plain meaning of the language employed. *Id.*

A court construing a trust applies the same rules applicable to the construction of a will, and the paramount principle in the interpretation of wills is that the intention of the testator, or trust settlor, governs. *Id.* The settlor's intention is to be determined from viewing the four corners of the instrument considering the language used and giving meaning to all its provisions whenever possible. *Id.* The court may read the language used by the settlor in light of the circumstances existing when the trust was written but only if there is uncertainty about the settlor's intentions from looking at the language used in the trust. *Id.*

Applying these rules of construction, we affirm the circuit court's decision because, prior to Dolores's death, both trusts granted the trustee "all the rights, powers, and privileges that would be possessed by an absolute, single owner" over the trust property. "It is a well-settled rule of law that a man may dispose of his property as he may desire, in the absence of a showing of lack of mental capacity, or of fraud or undue influence practiced upon him." *Smith v. Smith*, 209 Ark. 546, 548, 191 S.W.2d 956, 957 (1946); *Millwee v. Wilburn*, 6 Ark. App. 280, 284, 640 S.W.2d 813, 816 (1982); *see also Phillips v. Washington Legal Found.*, 524

U.S. 156, 167 (1998) (A "fundamental maxim of property law [is] that the owner of a property interest may dispose of all or part of that interest as he sees fit."). This would include the power to use his or her property to guarantee the debts of another person or his own business venture. Appellants do not address whether this provision would allow Hall Sr. to execute the Indemnity Agreement. The later amendments to the trusts did not change this power. There is also no argument that Hall Sr. breached his fiduciary responsibilities. As we mentioned above, the trust is construed in favor of the validity of the trustee's actions.

Because the trusts clearly gave the trustee broad powers over the trust assets, Hall Sr., as trustee, could execute the Indemnity Agreement to guarantee the debts of CMM. Therefore, there is no need to discuss whether the trusts' incorporation of the statutory powers of a fiduciary also confers upon the trustee the power to execute the Indemnity Agreement. Likewise, there is no need to discuss whether the amendments to the trusts are invalid under the Premarital Agreement because the power existed prior to any amendments to the trusts.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Barber Law Firm, PLLC*, by: *Jim L. Julian*, *Mark W. Hodge*, and *Rachel E. Hildebrand*, for appellants.

*Weinstein Radcliff Pipkin LLP*, by: *Gregory M. Weinstein*; and *Hyden, Miron & Foster, PLLC*, by: *Philip Miron* and *Guy W. Murphy, Jr.*, for separate appellees U.S. Specialty Insurance Company and American Contractors Indemnity Company.